IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SEAN OWENS | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-665-SDJ |
| | § | |
| TRANSUNION, LLC, ET AL. | § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART
THE REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of the United States Magistrate Judge in this action (the "Report"), this matter having been referred to the magistrate judge under 28 U.S.C. § 636. On August 2, 2021, the magistrate judge entered proposed findings and recommendations in the Report, (Dkt. #65), recommending that the Court grant Defendant Michigan Guaranty Agency's ("MGA") Motion for Judgment on the Pleadings, (Dkt. #53). Plaintiff Sean Owens, proceeding pro se, filed objections to the Report. (Dkt. #70). And MGA responded to Owens's objections. (Dkt. #75).

Having received the Report, reviewed Owens's objections de novo, and considered the relevant law, the Court concludes that the findings and recommendations in the Report should be **ADOPTED in part** and **MODIFIED in part**.

I. BACKGROUND

From 2003 to 2006, Owens took out sixteen student loans, which were transferred to MGA on April 24, 2015. *See* (Dkt. #11 at 6). Owens alleges that his student loans, as reported in his credit file and credit reports, list an opening date of

1

April 24, 2015. (Dkt. #11 at 6–7). He also says this opening date is incorrect because it reflects when the loans were transferred to MGA, not the date on which the loans were originally disbursed to him. (Dkt. #11 at 7). According to Owens, the loans should list, at the latest, an opening date of 2006. *See* (Dkt. #11 at 7).

Owens, proceeding pro se, sued MGA. In the operative complaint, Owens alleges that MGA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; and two criminal statutes, 18 U.S.C. § 1038 (conveyance of false information), and 18 U.S.C. § 1341 (mail fraud). (Dkt. #11 at 15–19).

MGA filed a motion for judgment on the pleadings. (Dkt. #53). Relevant here, MGA argued that the claims against it should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction based on sovereign immunity. (Dkt. #53 at 3, 5–14, 24–25). MGA also contended, in the alternative, that Owens failed to state a claim for relief under either 18 U.S.C. § 1038 or 18 U.S.C. § 1341 because these criminal statutes do not provide Owens a private right of action. (Dkt. #53 at 23–25).

The magistrate judge agreed with MGA. In the Report, the magistrate judge concluded that MGA is entitled to sovereign immunity because it is an arm of the State of Michigan, neither the FCRA nor FDCPA abrogate that immunity, and MGA has not consented to this suit. (Dkt. #65 at 6–14). So far, so good.

But then the magistrate judge determined that only Owens's FCRA and FDCPA claims should be dismissed under Rule 12(b)(1) because, in the magistrate

judge's view, MGA only asserted sovereign immunity against those two claims. (Dkt. #65 at 6). The magistrate judge proceeded to address Owens's claims under 18 U.S.C. §§ 1038 and 1341. And after finding that neither criminal statute affords Owens a private right of action, the magistrate judge concluded that judgment on the pleadings should be granted in MGA's favor on these two claims. (Dkt. #65 at 14–16). As the Court explains below, this is where the magistrate judge went astray.

## II. Discussion

Owens's objections to the Report boil down to two primary arguments challenging the magistrate judge's conclusion that MGA is entitled to sovereign immunity. First, Owens argues that—based largely on federal statutes, out-of-circuit authorities, and a state-court case addressing governmental (not sovereign) immunity—MGA is not an arm of the State of Michigan. Second, Owens contends that either MGA or the Michigan Finance Authority ("MFA") has waived MGA's immunity. The Court disagrees. For that reason, the magistrate judge properly concluded that Owens's FCRA and FDCPA claims against MGA should be dismissed under Rule 12(b)(1) based on sovereign immunity.

At the same time, the magistrate judge should have ended its analysis with sovereign immunity. The magistrate judge had no basis to find that MGA only asserted sovereign immunity against Owens's FCRA and FDCPA claims. Instead of addressing the merits of Owens's claims under 18 U.S.C. §§ 1038 and 1341, the magistrate judge should have also recommended dismissal of those claims under Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.

3

**A. Arm of the State**

The Court considers six factors to determine whether an entity is an arm of the state for purposes of sovereign immunity. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). These factors are: (1) whether the state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Id.* at 256–57. Each factor need not be present for sovereign immunity to be extended. *Id.* at 257. And while no one factor is dispositive, the second one is the most important. *Id.*

Applying this test, the magistrate judge determined that the first four factors—including the source of the entity's funding—weighed in favor of finding that MGA is an arm of the state and that the latter two weighed against such a finding. (Dkt. #65 at 9–13). Balancing the relevant factors, the magistrate judge concluded that MGA is entitled to arm-of-the-state status and, therefore, has sovereign immunity from Owens's FRCA and FDCPA claims. (Dkt. #65 at 14). Owens does not specifically object to the magistrate judge's findings on each factor or argue that the magistrate judge erred in balancing the factors.

Instead, construing his objections liberally, Owens appears to argue that MGA cannot be an arm of the state because it was not expressly created by a Michigan statute. Owens has not cited any legal authority to support such a requirement. To

4

the extent Owens's argument challenges the magistrate judge's determination as to the first arm-of-the-state factor, that factor looks to "[w]hether the state statutes and case law *view* the agency as an arm of the state." *Daniel*, 960 F.3d at 256.

In the Report, the magistrate judge cited Michigan statutes and a Michigan regulation that suggest MGA is an arm of the state. *See* (Dkt. #65 at 9–10). Owens has not meaningfully addressed these authorities in his objections. Nor has Owens meaningfully grappled with case law, that views MGA as an arm of the state, which the magistrate judge also relied on. *See In re Murphy*, 271 F.3d 629, 631–33 (5th Cir. 2001) (affirming the district court's conclusion that MGA is "an arm of the state of Michigan" and was entitled to sovereign immunity from a bankruptcy suit to discharge student loan debt); *In re Scarborough*, 229 B.R. 145, 148 (Bankr. W.D. Mich. 1999) (explaining that MGA is "a division of the Michigan Higher Education Student Loan Authority" and "a State Entity that would be afforded Eleventh Amendment protection").

Owens contends that these authorities and case law, including Fifth Circuit precedent, are "obsolete" because they predate enactment of the Health Care and Education Reconciliation Act of 2010 ("HCERA"). (Dkt. #70 at 5); *see also* Health Care & Educ. Reconciliation Act of 2010, Pub. L. No. 111–152, §§ 2201–2213, 124 Stat. 1029, 1074–81. But Owens has not explained how the HCERA altered MGA's status as an arm of the state for purposes of sovereign immunity. Although HCERA eliminated new lending under the Family Federal Education Loan Program ("FFELP") after 2010, *see* 20 U.S.C. § 1071(d), the HCERA did not abolish entities

5

guaranteeing FFELP loans. *See Estes v. ECMC Grp., Inc.*, No. 19-cv-822, 2021 WL 3146240, at *1–4 (D.N.H. July 26, 2021). Rather, FFELP loans continue to exist, and the amounts owed under them are still due. *See id.* And until outstanding FFELP loans are paid off, guaranty agencies such as MGA continue to insure and service such loans despite the HCERA's enactment in 2010. *See id.* Thus, Owens's reliance on the HCERA is misplaced.

Owen's reliance on *Pele v. Penn. Higher Educ. Assistance Agency*, 628 F. App'x 870, 872 (4th Cir. 2015), is likewise misplaced. In *Pele*, the Fourth Circuit concluded that the Pennsylvania Higher Education Assistance Agency ("PHEAA") did not qualify as an arm of the state for purposes of sovereign immunity. *Id.* But that decision was not based on the enactment of the HCERA—in fact, the court did not even mention the Act. The court's determination, instead, turned on that fact that "PHEAA is financially independent from the Commonwealth and supports itself with revenues generated through PHEAA's commercial financial-services activities." *Id.*; *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 804 F.3d 646, 667–68 (4th Cir. 2015) (explaining that funds belonging to Pennsylvania's Treasury would not be affected if a judgment was entered against PHEAA because it controlled significant independent revenues generated by its extensive commercial activities, such that the judgment would be paid with funds belonging to PHEAA, not Pennsylvania).

Here, in contrast, MGA has no commercial financial activities and only two pools of funding—Michigan funds and federal funds. *See* (Dkt. #65 at 11) (citations

6

omitted). Under federal law, MGA cannot use the federal funds to satisfy a judgment awarding damages to Owens. *See* 20 U.S.C. § 1072a(d). So, if judgment is entered against MGA, such a judgment would be paid with state funds. *See* (Dkt. #65 at 11). *Pele* and, by extension, *Oberg* thus refute rather than support Owens's argument.

Owens also contends that the Federal Activities Inventory Reform Act ("FAIR Act"), Pub. L. 105-270, 112 Stat. 2382 (1998), which defines activities constituting an "inherently governmental function," should negate the magistrate judge's finding that MGA is an arm of the state. *See* (Dkt. #70 at 8 n.5). Invoking the FAIR Act, Owens argues that "servicing, tracking, and collecting on student loans" are "ministerial and administrative in nature," and are thus not governmental activities. *Id.*

Owens's argument is unpersuasive for several reasons. First, the FAIR Act applies only to federal agencies, not state agencies. *See generally* Pub. L. 105-270, 112 Stat. 2382. Second, to the extent Owens relies on the FAIR Act as persuasive authority, it refutes rather than supports his position. The FAIR Act defines "inherently governmental functions" as those including, but not limited to, acts advancing the federal government's interests through "contract management," "significantly affect[ing]" the "property of private persons," and exerting "ultimate control" over "the collection, control, or disbursement of appropriated and other Federal funds." *See* Pub. L. 105-270, § 5, 112 Stat. 2382, 2384–85. In contrast, the FAIR Act excludes the following from the definition of inherently governmental functions: "any function that is primarily ministerial and internal in nature (such as

7

building security, mail operations, operations of cafeterias, housekeeping operations and maintenance, . . . and other routine electrical or mechanical services).": *Id.* Looking to the plain language of the statute, MGA's activities as a guarantor of student loans are more akin to the activities listed in the FAIR Act's definition for inherently governmental functions than those listed for primarily ministerial or internal functions.

Owens also points to *Est. of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't*, 732 S.E.2d 137 (N.C. 2012), to support his argument that MGA is not an arm of Michigan. That case doesn't help Owens because the court addressed whether local entities were entitled to governmental immunity, which applies to counties and municipalities, not sovereign immunity, which applies to arms of the state. *See id.* at 139.

## B. Waiver of Immunity

Finally, Plaintiff argues that MGA and MFA have voluntarily waived their immunity from suit. *See* (Dkt. #70 at 3–5). In support, Owens cites the following Michigan statute:

> [MGA's parent agency] may contract and be contracted with, sue and be sued, implead and be impleaded, and complain and defend in all courts of law and equity. The authority shall exercise its powers as an autonomous entity, independent of the director of the department of education.

(Dkt. #70 at 4) (emphasis removed) (quoting MICH. COMP. LAWS § 390.951). Owens is mistaken.

8

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotation omitted). A state's consent to suit against it in federal court must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). As the Supreme Court has explained, a state does not waive sovereign immunity "merely by consenting to suit in the courts of its own creation," or by "stating its intention to sue and be sued," or even by "authorizing suits against it in any court of competent jurisdiction." *Coll. Sav. Bank*, 527 U.S. at 676 (cleaned up).

Under this precedent, Mich. Comp. Laws § 390.951 does not constitute an unequivocal waiver of sovereign immunity. *See id.*; *see also Proctor v. Higher Ed. Assistance Found.*, No. 2:07-CV-839, 2008 WL 2390790, at *4 (S.D. Ohio June 9, 2008) (holding that Mich. Comp. Laws § 390.951 "does not constitute an unequivocal consent to suit in federal court"). Owens has therefore failed to show that MGA waived its immunity or consented to this suit.

In sum, the Court agrees with the magistrate judge's conclusion Owens's FCRA and FDCPA claims against MAG should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.

## C. Dismissal of Owens's Remaining Claims Based on Sovereign Immunity

The Court disagrees with the magistrate judge's determination that MGA only asserted sovereign immunity against Owens's FCRA and FDCPA claims. Nowhere in

9

its briefing did MGA limit its sovereign-immunity argument to those claims; in fact, all of MGA's other arguments were made in the alternative. *See* (Dkt. #53, #58). Thus, the magistrate judge should not have reached the merits of Owens's claims under 18 U.S.C. §§ 1038 and 1341. Those claims, as with Owens's FCRA and FDCPA claims, should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.

### III. CONCLUSION

For the foregoing reasons, Owens's objections, (Dkt. #70), are **OVERRULED** and the Report and Recommendation of the United States Magistrate Judge, (Dkt. #65), is **ADOPTED in part** and **MODIFIED in part**. The Court adopts the following findings and conclusions:

- The Court adopts the magistrate judge's conclusion that Owens's FCRA and FDCPA claims against MGA should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.

The Court modifies the following findings and conclusions:

- The Court concludes that Owens's claims under 18 U.S.C. §§ 1038 and 1341 should also be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity.

It is, therefore, **ORDERED** that MGA's Motion for Judgment on the Pleadings, (Dkt. #53), is **GRANTED** and that Owens's claims against MGA are **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 30th day of September, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE