**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **SEAN OWENS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-665-SDJ-KPJ** |
| | § | *consolidated with* |
| **TRANS UNION, LLC,** *et al.*, | § | **No. 4:21-cv-142-SDJ-KPJ** |
| | § | |
| **Defendants.** | | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The following motions (together, the "Motions") are pending before the Court in this consolidated matter:

1. Defendant Navient Solutions, LLC's ("Navient") Motion to Dismiss the Fourth Amended Complaint or Strike Impermissible Claims ("Navient's Motion") (Dkt. 123); and

2. Defendant Educational Credit Management Corporation's ("ECMC") Motion to Dismiss the Fourth Amended Complaint or Strike Impermissible Claims ("ECMC's Motion") (Dkt. 126).

Having considered the filings and the relevant law, the Court recommends both Motions (Dkts. 123 and 126) be **GRANTED IN PART** and **DENIED IN PART**.

## I.    PROCEDURAL HISTORY

### A.  Case No. 4:20-cv-665

On September 2, 2020, Plaintiff, proceeding *pro se* filed his Original Complaint in Case No. 4:20-cv-665 against six Defendants: Equifax Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), Michigan Guaranty

Agency ("MGA"), Navient, and ECMC. *See* Dkt. 1.[1] Plaintiff's Original Complaint (Dkt. 1) was superseded by a First Amended Complaint (Dkt. 4) and a Second Amended Complaint (Dkt. 11).

On September 29, 2021, the Court dismissed Plaintiff's claims against Navient asserted under 15 U.S.C. §§ 1681c(a)(4), 1681c(a)(5),1681e(b), 1681i(a)(1)(A), 1681s-2(a)(1), 1681s2(a)(2), 1692c, 1692d, and 1692e, and 18 U.S.C. §§ 1083 and 1041 with prejudice. *See* Dkt. 85 at 5. The Court permitted Plaintiff to amend his claim against Navient under Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. §1681s-2(b).[2] *See id.*

On October 12, 2021, Plaintiff filed his Third Amended Complaint. *See* Dkt. 90. On October 26, 2021, Navient moved to Dismiss the Third Amended Complaint or Strike Impermissible Claims. *See* Dkt. 94. On October 27, 2021, ECMC also moved to dismiss Plaintiff's Third Amended Complaint. *See* Dkt. 97.

**B. Case No. 4:21-cv-142**

On January 20, 2021, Plaintiff filed an Original Petition in County Court at Law 2, Denton County, Texas, against Trans Union, Equifax, Experian, Navient, ECMC, and MGA. *See* 4:21-cv-00142, Dkt. 1-3. On February 18, 2021, Trans Union removed the case to this Court. *See* 4:21-cv-142, Dkt. 1. On November 29, 2021, Plaintiff filed an Amended Complaint in Case No. 4:21-cv-00142. *See* 4:21-cv-00142, Dkt. 25.

---

[1] Except as otherwise noted, all record citations in this Order and Report and Recommendation are to Case No. 4:20-cv-665.

[2] On September 29, 2021, the Court also ordered that the Credit Bureaus' Motion be granted in part and denied in part, and that Plaintiff's claims against the Credit Bureaus asserted under 15 U.S.C. §§ 1681s-2(a)(1), 1681s-2(a)(2), 1681s-2(b), and 18 U.S.C. §§1038 and 1041 and under U.S.C. §§1681c(a)(4), 1681c(a)(5), 1681e(b), and 1681(a)(1)(A), insofar as they relate to Plaintiff's November 25, 2019 dispute and Plaintiff's December 1, 2019 dispute, be dismissed with prejudice. *See* Dkt. 84. The Court permitted Plaintiff to amend his complaint against the Credit Bureaus as to the FCRA claims made under 15 U.S.C. §§ 1681c(a)(4)-(5), 1681e(b), and 1681(a)(1)(A), relating to Plaintiff's November 25, 2019 and December 1, 2019 disputes within fourteen days from the Court's Order. *See id.* Additionally, on September 30, 2021, the Court ordered that MGA's Motion for Judgment on the Pleadings be granted and that Plaintiff's claims against MGA be dismissed with prejudice with no leave to amend. *See* Dkt. 87.

## C. Consolidation

On December 8, 2021, the Court held a joint hearing in both cases at the request of the parties. On December 13, 2021, the Court ordered that both cases be consolidated. *See* Dkt. 118. In the same Order, the Court granted Plaintiff's oral motion for leave to amend his complaint. *Id.* The Court directed Plaintiff to file an amended complaint that consolidates his claims. *Id.* On December 22, 2021, Plaintiff filed his Fourth Amended Complaint. *See* Dkt. 120.

## D. Plaintiff's Fourth Amended Complaint

Plaintiff's Fourth Amended Complaint alleges the following regarding Navient and ECMC (collectively, "Defendants"). *See* Dkt. 120. Plaintiff asserts that from 2003 to 2006, he took out sixteen student loans with Citibank, a private lender. *See id.* at ¶ 21. Plaintiff asserts that Citibank sold its student loan portfolio to Sallie Mae Inc. in 2010, which reorganized as Navient in 2014. *See id.* at ¶ 14. Plaintiff alleges that Citibank, despite selling its student loan portfolio, was the "only servicer of the student loans" that he knew of from his last loan disbursement in 2006 through 2012. *See id.* During this time period, Plaintiff did not "make any arrangements for repayment of the [student loans] with any business entity, governmental agency, guaranty agency, loan servicing center, or non-profit organization." *See id.*

On or about July 2019, Plaintiff alleges that he applied for a mortgage loan, but was denied due to "adverse, inaccurate, erroneous, and re-aged credit student loan account furnished by Navient and ECMC" to Trans Union, Equifax, and Experian (collectively, the "Credit Bureaus"). *See id.* at ¶ 27. Plaintiff contends that Navient and ECMC submitted credit files to the Credit Bureaus reflecting that the student loan accounts were opened on April 24, 2015. *See id.* at ¶ 31. Plaintiff states that there was no record, promissory note, or contractual agreement between him and Navient or ECMC "executed on the date of April 2012, April 24, 2015, or any time after the

year 2006" and "[t]herefore, it is not possible for" Navient and ECMC to report that any student

loan accounts were opened by Plaintiff on April 24, 2015. *See id.* Plaintiff alleges that there are

multiple errors in his credit reports. Below, the Court summarizes his allegations as to Navient and

ECMC:

- Plaintiff alleges Defendants supplied outdated and adverse student loan account information to the Credit Bureaus that antedated his credit report by more than seven years and that this antedated account information appears on his January 11, 2020 credit report. *See id.* at ¶ 34. Plaintiff contends that Navient and ECMC should have corrected this information based on Plaintiff's disputes with the Credit Bureaus in 2017 and 2019. *See id.* at ¶ 35.

- Plaintiff alleges his August 30, 2020 Equifax credit report provides a "*Date of First Delinquency*" of "Dec 01, 2013" and *Delinquency First Reported*" date of August 1, 2018. *Id.* at ¶ 36. Plaintiff alleges that the report also states the accounts as having a "*Date Opened*" of November 1, 2013, which is different than the *"Opened*" date of April 24, 2015 on a Credit Karma report pulled on September 29, 2020 and an Experian credit report pulled on August 30, 2020. *See id.*

- Plaintiff also asserts that there are discrepancies when reviewing information supplied to a third-party source, Credit Karma; and that Defendants report a *"Last Payment*" made on "Mar 13, 2019" on the Trans Union Report and "Mar 01, 2019" for the Equifax report. *See id.* at ¶ 37. Plaintiff contends that Navient and ECMC erroneously submitted information in Plaintiff's "*Payment History*" on the Credit Karma report indicating Plaintiff had made "88% of payments on time." *Id.* Plaintiff states that the Trans Union report for the "same source and account indicates 'You've paid off -39% of this loan,'" contradicting the Credit Karma report. *Id.*

- Plaintiff states that "there are no graphic symbols such as a green checkmark (i.e., Credit Karma's symbol" in the PAYMENT HISTORY field for the reporting source for the month of March 2019 which would correspond to a last payment made for the Trans Union and Equifax reports." *Id.*

Additionally, Plaintiff alleges he has "been a victim for many years of robocalling tactics," and

debt collectors associated with Defendants have contacted Plaintiff, his parents, and peers

regarding the student loan accounts. *Id.* at ¶ 101. Plaintiff allegedly "has been forced to change his

phone number(s) multiple times." *Id.* The Court will discuss Plaintiff's remaining allegations, as necessary, in its Analysis.

### E. Present Motions to Dismiss

On January 5, 2022, Navient filed its Motion to Dismiss that is presently before the Court (Dkt. 123), to which Plaintiff responded on January 19, 2022 (Dkt. 136), Navient replied on February 1, 2022 (Dkt. 150), and Plaintiff filed a sur-reply on February 8, 2022 (Dkt. 152).

On January 5, 2022, ECMC filed its Motion to Dismiss that is presently before the Court (Dkt. 126), to which Plaintiff responded on January 19, 2022 (Dkt. 137), ECMC replied on January 26, 2022 (Dkt. 140), and Plaintiff filed a sur-reply on February 1, 2022 (Dkt. 147).

## II.    APPLICABLE LEGAL STANDARDS

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-1761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). But "liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

## B.  Repleading under Fed. R. Civ. P. 15(a)

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving the pleading, or twenty-one days after a responsive pleading or Rule 12(b), (e), or (f) motion is served, whichever is earlier. *See* FED. R. CIV. P. 15(a). In all other cases, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires," "evinc[ing] a bias in favor of granting leave to amend." *Id.*; *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598

(5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." (citations omitted)).

"Nevertheless, this generous standard is 'tempered by the necessary power of a district court to manage a case.'" *Bell v. Dall. Cnty.*, 491 F. App'x 497, 498 (5th Cir. 2012) (per curiam) (quoting *Schiller v. Alpert Grp.*, 342 F.3d 563, 566 (5th Cir. 2003)). In deciding whether to grant leave to amend, courts may consider a variety of factors in exercising their discretion, "including undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *See id.* Further, courts have the power to strike amended claims when a plaintiff has exceeded the granted scope of leave to amend. *See Gooden v. Mackie*, No. 4:19-cv-2948, 2020 WL 2201901 at *2 (S.D. Tex. Apr. 21, 2020); *Clapper v. Am. Realty Investors, Inc.*, No. 3:14-cv-2970, 2019 WL 5865709, at *9 (N.D. Tex. Nov. 7, 2019); *Klein v. Walker*, No. 1:14-cv-509, 2016 WL 9245462, at *3–4 (E.D. Tex. Dec. 14, 2016); *Barbour v. City of Forney*, No. 3:15-cv-90, 2015 WL 4094005, at *3 (N.D. Tex. June 17, 2015); *Brackens v. Ocwen Loan Servicing, LLC*, No. 3:13-cv-3458, 2015 WL 1808541, at *3 (N.D. Tex. Apr. 21, 2015).

### III.    **ANALYSIS**

## A.  **ECMC's Motion**

In its Motion, ECMC raises two primary arguments. First, it contends that Plaintiff's Fourth Amended Complaint should be dismissed or in the alternative, stricken because it impermissibly exceeds the scope of leave granted by the Court. *See* Dkt. 126 at 6–8. Second, ECMC contends

that Plaintiff's defamation/libel claim fails to state a claim for relief. *Id.* at 8–10. The Court will address each argument in turn.

1. *Whether the Fourth Amended Complaint Exceeds the Scope of Leave Granted by the Court*

ECMC argues that Plaintiff exceeded the scope of leave to amend when he filed his Fourth Amended Complaint in violation of Rule 15. *See* Dkt. 126 at 7–8. In response, Plaintiff contends that in granting him leave to file the Fourth Amended Complaint following consolidation of his cases, the Court did not impose any limitations on the scope of leave granted. *See* Dkt. 137 at 7–8. The Court agrees with Plaintiff.

During the December 8, 2021 hearing at which the Court consolidated the cases and granted Plaintiff's oral motion for leave to amend his complaint, the Court explicitly addressed Defendants' concerns regarding the scope of leave. The Court had the following exchange with the parties:

> **THE COURT:** Well, there may be some duplication. I'm not comfortable in a very broad sense just saying whatever claims were asserted in 142 that are still pending cannot be consolidated into 665 because I don't know what those claims are as I sit here today. And so if that does happen -- I mean, any claims that the Court's already dismissed in 420-cv-665 cannot be -- cannot be reargued. And if they are, I suspect the defendants will file a motion. If there is a claim that is similar in 142 that's still pending, then Mr. Owens is entitled to assert that claim in the consolidated case.

> **[NAVIENT'S COUNSEL]:** I agree, your Honor. I think -- and part of the reason why the parties in 142 requested the status conference was that the initial complaint stated claims under state law, including the defamation claim. I don't think the parties would dispute that those claims can be consolidated into 665. They haven't been ruled on or addressed by the Court. But what I was referring to were the claims that were added to 665 and then filed in 142. The plaintiff filed the second motion for remand and then simultaneously filed an amended complaint.

> The motion for remand addressed defamation. The amended complaint does not contain a defamation claim. It contains federal law claims that were brought in 665. So that's where I'm sort of -- that's what I'm seeking to address is plaintiff

of is pleading claims he already pled in 665 in 142 and then bringing them back into 665 is sort of an end-around – around the defendants' arguments and the Court's prior rulings.

And as I mentioned, too, those claims were -- you know, the parties -- parties maintained that they were not amended or added with authorization. So if the Court is granting authorization to amend the complaint here, I think the concern is that to what scope does that entail. It may allow the plaintiff to bring claims in 665 that he was not initially entitled to bring merely because he also brought them in 142 but not until after the defendant raised that he wasn't allowed to do that in 665.

**THE COURT**: I -- I hear you, and I understand your issue. But you're either going to file a motion to dismiss in 665, or you're going to file a motion to dismiss in 142. I don't think it would be proper for me at this point where there are claims that are pending in 142 to just instruct Mr. Owens that he can't file them. There's got to be a ruling by the Court and a consideration.

And so even if at the end of the day we get to where you are right now, which is those claims have already been addressed by the Court, and for the same reasons stated in its prior opinion, they should be dismissed, I don't think it would be proper for me to do that at this juncture. So because those claims are still pending, even if procedurally it was a run-around to be able to assert those claims again, it doesn't matter. Technically, they can't just outright be dismissed at this time.

And so, yes, Mr. Owens can assert any claims that are currently pending in 142 in the consolidated 665. And, obviously, you have the right to file a motion to dismiss if you think that certain claims should be dismissed, and the Court will readdress those. Does that make sense?

**[NAVIENT'S COUNSEL]**: Yes, your Honor. I was more just referring to the scope of the leave to amend, but I understand where the Court --

**THE COURT**: I'm not going to limit the scope because I don't think that would be proper. I mean, the Court limited the scope in granting leave to amend when it was addressing motions to dismiss as to certain claims. But for this purpose when the Court's consolidating cases, it -- particularly when I'm going to tell Mr. Owens there's not going to be any further leave for amendment until the Court considers any motion -- the round of motions to dismiss that I anticipate will be filed. Then I'm going to – I'm not going to -- to limit him in terms of what's already been asserted in 142, okay?

Dkt. 156 at 18–21. Based on the foregoing exchange, it is clear that the Court declined to limit the

scope of Plaintiff's leave to amend. As the Court explained during the hearing, while it had

previously considered the sufficiency of the claims asserted in Case No. 4:20-cv-665 due to the filing of Rule 12 motions in that case, it had not yet had an opportunity to consider whether the claims raised in Case No. 4:21-cv-142 survived Rule 12 scrutiny. Therefore, the Court found it would be improper to restrict the scope of Plaintiff's leave to amend, even though that might lead to some duplication and/or result in the filing of motions to dismiss. Ultimately, the power to grant leave to amend is firmly within the Court's discretion. *See TXI Operations, LP v. City of McKinney, Tex.*, No. 4:20-cv-00353, 2021 WL 5834436, at *1 (E.D. Tex. Dec. 9, 2021) (citing *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992)) ("Whether to grant leave to amend 'lies within the sound discretion of the district court.'"); *see also Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378–79 (5th Cir. 2014). Plaintiff did not exceed the scope of the leave to amend granted by the Court.

2. *Plaintiff's Defamation/Libel Claim Pursuant to Texas Civil Practice and Remedies Code*

Since both ECMC and Navient have moved to dismiss Plaintiff's defamation/libel claim, the Court will address their arguments together in the interest of efficiency. In Count VI of the Fourth Amended Complaint, Plaintiff alleges that Navient and ECMC defamed him by "willfully" transmitting credit files that contained "false, altered, inaccurate, and re-aged information" to the Credit Bureaus "during each consecutive month between the years 2019 through 2020." *See* Dkt. 120 at ¶ 115. Plaintiff contends Navient and ECMC's actions "injured [his] reputation" and "expose[d] [him] to public contempt, ridicule, financial injury, and . . . impeach[ed] [his] honesty, integrity, virtue, and reputation" in violation of Section 73.001 of the Texas Civil Practice and Remedies Code. *Id.* at ¶ 117.

In its Motion to Dismiss, Navient argues that Plaintiff's claim fails as a matter of law because it is preempted by the FCRA and is barred by Texas's one-year statute of limitations

period for defamation claims. *See* Dkt. 123 at 14–15. In its Motion to Dismiss, ECMC argues that Plaintiff fails to state a claim for relief under Rule 12(b)(6) because his allegations consist of a threadbare recital of the elements for the claim, supported only by conclusory assertions. *See* Dkt. 126 at 9. ECMC also argues that Plaintiff has failed to sufficiently allege that the statements at issue are *per se* in nature and is therefore not entitled to recover general damages under Texas law. *Id.* at 9–10. Because the Court finds that Plaintiff's defamation/libel claim is time-barred, the Court recommends dismissing this claim with prejudice for the reasons set forth below.

"A one-year statute of limitations applies to an action for defamation, and an action for defamation accrues when the defamatory statement is published." *Campone v. Kline*, No. 03-19-00908-cv, 2020 WL 7640040 at *4 (Tex. App.—Austin Dec. 22, 2020) (internal citations omitted); *see* TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for . . . [defamation] . . . not later than one year after the day the cause of action accrues."). In the credit reporting context, the Texas Supreme Court held in *Kelley v. Rinkle* "that the period of limitations for causes of action for libel of one's credit reputation by publication of a defamatory report to a credit agency *begins to run* when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report." 532 S.W.2d 947, 949 (Tex. 1976) (emphasis added); *see also Campone*, 2020 WL 7640040 at *4 (providing that the "discovery rule" tolls the statute of limitations in defamation actions that are not a matter of public knowledge "until the earlier of when the plaintiff learned of or, through the exercise of reasonable care and diligence, should have learned of the existence of the defamatory statement." (citing *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636–37 (Tex. App.—Houston [1st Dist.] 2002, no pet.))).

Here, Plaintiff initially raised his defamation/libel claim on January 20, 2021, in state court prior to removal. *See* No. 4:21-cv-142, Dkt. 1-3 at 25–26. Plaintiff alleges in the Fourth Amended

Complaint that he submitted "documentation or evidence of the '*falsity*' of the consumer credit file information along with written disputes on December 1, 2019" to Defendants. *See* Dkt. 120 at ¶ 118. Based on this allegation, Plaintiff appears to argue that the statute of limitations began running on December 1, 2019. *See, e.g.*, Dkt. 152 at 9–10 ("Plaintiff learned of the defamatory publications on December 1, 2019). The Court disagrees that the statute of limitations began running on this date.

Plaintiff asserts in his Fourth Amended Complaint that in July 2019, his application for a mortgage loan "was denied for reasons related directly to the adverse, inaccurate, erroneous, and re-aged credit student loan account information furnished by Navient and ECMC and reported or published by the defendant [Credit Bureaus]." *Id.* at ¶ 27. Plaintiff further claims that he obtained credit reports in connection with the mortgage loan denial, and subsequently filed disputes with the Credit Bureaus. *Id.* at ¶ 46; *see also id.* at ¶¶ 47–50 (alleging that in addition to formal dispute, he filed online disputes with the Credit Bureaus on November 20, 2019, which prompted the Credit Bureaus to notify Navient and ECMC between November 20 and 25, 2019). As stated earlier, *Kelley* instructs that a defamation claim under Texas law "*begins to run* when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report." 532 S.W.2d at 949 (emphasis added). In *Waxler v. Household Credit Servs., Inc*, the Dallas Court of Appeals held that "the denial of credit was the point when the legal injury was sustained and the cause of action accrued." 106 S.W.3d 277, 279 (Tex. App.—Dallas 2003, no pet.). In light of *Kelley* and *Waxler*, the Court finds that the statute of limitations began running in July 2019, when Plaintiff alleges he first learned that his mortgage loan was denied due to allegedly defamatory information in credit reports. Plaintiff does not provide an exact date in July 2019 that his loan was denied, but even if the Court assumes that the denial occurred at the very end of the month (i.e.,

July 31, 2019), Plaintiff's claim is time barred as he did not file his defamation claim in state court until over seventeen months later in January 2021.[3] Accordingly, the Court recommends dismissing Plaintiff's defamation/libel claim against Navient and ECMC with prejudice.[4]

### 3. Plaintiff's Remaining Claims as to ECMC

The Court takes this opportunity to note that with the exception of Plaintiff's defamation/libel claim, ECMC's Motion does not seek to dismiss any of Plaintiff's other claims against ECMC that are raised in the Fourth Amended Complaint.

Though ECMC vehemently argues that the Third Amended Complaint exceeded the scope of leave previously granted by the Court, *see* Dkt. 126 at 7, the Third Amended Complaint is no longer the operative complaint in this matter. As such, ECMC's cursory single-sentence statement that "the arguments to dismiss Plaintiff's [Third Amended Complaint] apply with equal force to Plaintiff's [Fourth Amended Complaint]" is plainly insufficient to bring those arguments before the Court in this round of motions practice. *See id.* It would be improper for the Court to *sua sponte* tailor arguments directed at claims in a prior complaint to a newly amended complaint.

---

[3] The Court notes that Plaintiff argues in his reply brief that the Texas Defamation Mitigation Act ("DMA") applies to his claim. *See* Dkt. 152 at 9–10. Assuming without deciding that Plaintiff is correct regarding the applicability of the DMA, Plaintiff's claim would still be time-barred. Plaintiff's timely compliance with the DMA would require at most thirty days to request a correction, *see* TEX. CIV. PRAC. & REM. CODE § 73.057, and another ninety days of a tolling period after requesting the correction before the statute of limitations would begin to run, *see* § 73.055. Assuming that the mortgage loan denial occurred on July 31, 2019, Plaintiff would have needed to file his defamation claim by November 28, 2020. As Plaintiff filed his defamation action in state court on January 20, 2021, his claim is time-barred.

[4] Plaintiff's allegations in the Fourth Amended Complaint as to the defamation/libel claim use Navient and ECMC interchangeably; critically, Plaintiff does not argue that his claim began running at a different time as to each defendant. Additionally, ECMC raised the statute of limitations as a defense in its Answer to Plaintiff's Fourth Amended Complaint. *See* Dkt. 130 at 23. Therefore, the Court finds Plaintiff's defamation/libel claim as to Navient and ECMC is time-barred. *See Sullivan v. Chastain*, No. Civ.A.SA04CA0803XR, 2005 WL 984348, at *2–3 (W.D. Tex. Apr. 28, 2005) (raising the statute of limitations issue as to all remaining defendants after one group of defendants raised the issue in a motion to dismiss the plaintiff's slander, libel, and defamation claims).

*4.  Recommendation*

Based on the foregoing, the Court recommends ECMC's Motion (Dkt. 126) be granted in part and denied in part. Plaintiff's defamation/libel claims as to Navient and ECMC should be dismissed with prejudice.

## B.  Navient's Motion

In its Motion to Dismiss (Dkt. 123), Navient raises the following arguments. First, like ECMC, Navient argues that Plaintiff impermissibly exceeded the scope of leave to amend granted by the Court. *See* Dkt. 123 at 7. Second, Navient argues that Plaintiff cannot add new claims or amend prior allegations solely because of the Court's consolidation order. *See id.* at 7–8. Third, Navient argues that Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim fails as a matter of law because the Court previously determined—prior to consolidation—that Navient is not a debt collector. *See id.* at 8–9. Fourth, Navient contends that Plaintiff's Telephone Consumer Protection Act ("TCPA") claim fails to state a claim for relief, and in the alternative, is time-barred. *See id.* at 8–11. Fifth, Navient argues that Plaintiff's invasion of privacy claim is time-barred and fails to state a claim upon which relief can be granted. See id. at 11–12. Sixth, Navient contends Plaintiff's FCRA claim under 15 U.S.C. § 1681s-2(b) fails to state a claim for relief. *Id.* at 12–14. Navient's final argument concerns Plaintiff's defamation/libel claim, *see id.* at 14–17, which the Court has already addressed above. *See supra* at 8–10.

*1.  Navient's First and Second Arguments Concerning Leave to Amend*

The reasons set forth earlier by the Court apply with equal force to Navient's contention that Plaintiff's Fourth Amended Complaint exceeded the scope of leave to amend. The Court need not repeat that reasoning here. Navient, however, also points to a number of changes in the factual allegations between the Third Amended Complaint and Fourth Amended Complaint, as well as

the removal of five exhibits attached to Plaintiff's Third Amended Complaint. *See* Dkt. 123 at 9–15, Dkt. 150 at 4. Navient contends these changes reveal the true purpose of Plaintiff's amendment—"to modify the Third Amended Complaint's allegations to evade the arguments in [Navient's] Motion to Dismiss [directed at the Third Amended Complaint]." *See* Dkt. 123 at 7–8. Navient maintains that allowing Plaintiff to carry over his duplicative claims through the consolidation order to the Fourth Amended Complaint "would reward Plaintiff's improper and deceptive conduct." *Id.*

In response, Plaintiff argues that he "has no legal obligation to address anything in prior Amended Complaints as they are mooted from the record and superseded by Plaintiff's [Fourth Amended Complaint]. Plaintiff's [Fourth Amended Complaint] in no way incorporates or references either his [Third Amended Complaint] or [Second Amended Complaint] and the defendant cannot aver or rely on mooted versions of . . . [P]laintiff's complaints as its argumentative base." *See* Dkt. 136 at 8.

An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 345 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). The majority rule across the circuits, including the Fifth Circuit, is that "statements in superseded pleadings are no longer treated as judicial admissions." *Assure re Intermediaries, Inc. v. W. Surplus Agency, Inc.*, No. 1:20-cv-189, 2021 WL 2402485, at *4–5 (N.D. Tex. June 11, 2021) (collecting cases); *see also Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 101 (5th Cir.1993) ("To the extent that [the plaintiff's original pleading] did make a 'judicial confession,' that confession was amended away."); *Zinante v. Drive Elec., L.L.C.*, 582 F. App'x 368, 370 n. 3 (5th Cir. 2014) (citing *W. Run Student Housing Assocs., L.L.C. v.*

*Huntington Nat. Bank*, 712 F.3d 165, 171–72 (3d Cir. 2013)). "That is so even when the proposed amendment flatly contradicts the initial allegation" or when the plaintiff sought to take a contrary position to avoid dismissal. *W. Run Student Housing Assocs., L.L.C.*, 712 F.3d at 172.

Thus, at the motion to dismiss stage, the Court may not consider the factual allegations raised in Plaintiff's previous complaints and the attached exhibits. These superseded allegations and their exhibits may be considered as evidence at the summary judgment or trial stage. *See White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *see also* 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1474 (3d ed. 2021). Navient's arguments concerning Plaintiff's amendment tactics do not provide a basis for the Court to dismiss his claims against Navient. The Court therefore turns to consider the merits of Plaintiff's claims against Navient, each of which Navient seeks to dismiss in its Motion.

### 2. FDCPA claim

Plaintiff's Fourth Amended Complaint asserts that Navient is a "debt collector," as defined in 15 U.S.C. § 1692(a)(6), who "attempt[ed] to unlawfully collect a debt allegedly owed by the plaintiff that was purportedly owed or due to be owed to Citibank." *See* Dkt. 120 at ¶ 29. Plaintiff further alleges that Navient used "robocalling" tactics to contact Plaintiff, his parents, and peers regarding the subject student loan accounts. *See id.* at ¶ 101. Plaintiff alleges that these "harassing" tactics have caused Plaintiff to have to "change his phone number(s) multiple times over recent years." *See id.*

"To state a claim under the FDCPA, the plaintiff must show: (1) he was the object of collection activity arising from a consumer debt; (2) that the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Polk v. Mvconnect, LLC*, No. 3:21-cv-00075, 2022 WL 1747000, at *2 (S.D. Tex. May 31, 2022)

(citing *Douglas v. Select Portfolio Servicing Inc.*, No. CIV.A. 4:14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015)). Under the FDCPA, a debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Navient argues in its Motion to Dismiss that this Court has already found it is not a "debt collector" within the meaning of the FDCPA. *See* Dkt. 123 at 8. Navient's argument amounts to a res judicata argument. Generally, res judicata is "an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x. 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Par. School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). However, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466–67 (5th Cir. 2013). "[C]laim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final

judgment on the merits; and (4) the same claim or cause of action was involved in both actions."

*Comer*, 718 F.3d at 467.

> In its prior Report and Recommendation, the Court explained the FDCPA:
>
> enumerates numerous exceptions. Most pertinent here, the FDCPA does not consider the following a debt collector: "any person collecting or attempting to collect any debt owed . . . [that] concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F)(iii). In simpler terms, this exception applies where a person collecting on a debt (1) obtained the debt and (2) the debt was not in default upon obtainment.

*See* Dkt. 78 at 13. Plaintiff's operative complaint at the time alleged that Navient obtained Plaintiff's student loans upon their creation, at which point they were not in default. *Id.* at 14. Finding that the "the FDCPA excludes such loan servicers from the definition of a debt collector," the Court determined that Navient could not be held liable under §§ 1692c, 1692d, and 1692e of the FDCPA. *See* Dkt. 78 at 13; *see also* Dkt. 85 at 5. Plaintiff's Fourth Amended Complaint attempts to resurrect the FDCPA claim by modifying the timing of Navient's acquisition of Plaintiff's student loans. Plaintiff now contends that the sixteen student loans "were, at all times, in delinquent or default status prior to Navient . . . acquiring, purchasing or being assigned such loans." *See* Dkt. 120 at ¶ 99. He alleges all sixteen student loans were originated and funded by Citibank, who was "the only servicer of the student loans known to . . . Plaintiff" between 2006, the year Plaintiff's last student loan was disbursed, and 2012. *Id.* at ¶¶ 21–22. Plaintiff alleges that at no time from 2012 to present did he "sign[] any promissory note evidencing a debt owed to . . . Navient"; he further alleges that he did not open an account or enter into any contractual agreement with Navient "in April 2012 or at any time prior to or after the latter date." *Id.* at ¶ 23.

These allegations in the Fourth Amended Complaint are different from those previously addressed in the Court's Report and Recommendation. While Navient may be correct that Plaintiff is "attempting to manipulate the salient facts . . . in order to survive a motion to dismiss," the facts

supporting the FDCPA claim asserted in the Fourth Amended Complaint are simply not the same facts the Court considered in its prior Report and Recommendation when it determined Navient was not a debt collector. At the motion to dismiss juncture, the Court's review is confined to the facts raised in the Fourth Amended Complaint, and not anything in prior complaints or exhibits to such complaints (which Navient contends confirm it serviced the loans prior to default). Accordingly, Navient's res judicata argument fails to pass muster because the nucleus of operative facts has changed. *See Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 934 (5th Cir. 1999) ("[T]he critical issue is whether the two actions under consideration are based on the same nucleus of operative facts.") (internal citation and quotation marks omitted). This being the only argument Navient raises in its Motion with respect to the FDCPA claim, the Court recommends denying Navient's Motion as to the FDCPA claim.

### 3.  TCPA Claim

Navient next argues that Plaintiff has failed to plead a cognizable claim under the TCPA.[5] *See* Dkt. 123 at 9–11.

In the Fourth Amended Complaint, Plaintiff alleges that Navient "habitually engaged in the practice of robocalling and using automatic telephone dialing systems with pre-recorded voice messages to contact and harass the plaintiff, the plaintiff's parents, and the plaintiff's peers without his consent at the plaintiff's landline and cellular telephone numbers and at the same devices for Plaintiff's parents and peers." Dkt. 120 at ¶ 104. Plaintiff alleges that he "has been forced to change his phone number(s) multiple times." *Id.* at ¶ 101. Plaintiff states that he had "put [Defendants] on notice as early as October 2017 . . . [y]et, the defendant furnishers [i.e. Navient and ECMC]

---

[5] The Court does not address Navient's argument that Plaintiff added additional factual allegations in the Fourth Amended Complaint in order to evade arguments Navient raised in its previous Motion to Dismiss. *See* Dkt. 123 at 9–11. As discussed earlier, the Court will not consider Plaintiff's superseded complaints and exhibits.

continued without pause utilizing automated dialing systems and placing calls with artificial or prerecorded voice messages . . . ." *Id.* at ¶ 107. Finally, Plaintiff contends that Navient was "notified by the [Credit Bureaus] of Plaintiff's disputes on or about November 20, 2019. However, [Navient] did not cease in [its] collection efforts." *Id.* Plaintiff alleges the foregoing conduct is prohibited under Sections 227(b)(1)(A)(iii) and 227(b)(1)(B) of the TCPA. *Id.* at ¶ 104.

Section 227(b) of the TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call," or "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *Id.* § 227(b)(1)(A)(iii), (B). An "automatic telephone dialing system" is defined in the TCPA as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a). Subsection (b)(3), in turn, provides a private right of action for a "violation of this subsection or the regulations prescribed under this subsection," including "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater[.]" *Id.* § 227(b)(3).

Plaintiff's allegations that Navient made multiple unwanted phone calls to his, his family's, and his peer's homes and cellular telephones using an automatic dialing system and with prerecorded/artificial voices appears at first glance to allege a TCPA injury. *See Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 562–63 (S.D. Tex. 2021) (citing *Cranor v. 5 Star Nutrition*, 998 F.3d 686, 689–93 (5th Cir. 2021)) ("If a single, unwanted text message gives rise to a concrete

injury, multiple unwanted phone calls with prerecorded messages surely do as well."); *see also Maydwell v. Ciara Fin. Servs., Inc.*, No. 3:19-cv-00051, 2019 WL 5102716, at *2 (N.D. Tex. Oct. 10, 2019) ("several federal courts in Texas have addressed this same argument and held that—especially at the pleading stage—an allegation that a plaintiff had to endure the nuisance of unwanted calls satisfies the injury-in-fact requirement for a TCPA claim."); *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 4:18-cv-00118, 2019 WL 1119365, at *3 (E.D. Tex. Jan. 11, 2019).

But Plaintiff's omissions from his Fourth Amended Complaint leave a large gap in the necessary factual allegations to support a TCPA claim. Plaintiff does not allege: (a) how he determined that Navient was the caller; (b) the actual dates and the number of calls received; (c) whether he listened and/or recorded the calls; and (d) how he knew that the calls were made with an automatic dialing system or with prerecorded/artificial voices. *See Pepper v. Life Protect 24/7, Inc.*, 2020 WL 10981893, No. 4:20-cv-02154, at *3 (S.D. Tex. Nov. 9, 2020); *Cunningham v. TechStorm, LLC*, No. 3:16-cv-2879, 2018 WL 3118400, at *4 (N.D. Tex. May 29, 2018) (finding plaintiff alleged sufficient facts to state a claim under § 227(b) where plaintiff alleged that defendant called plaintiff without plaintiff's consent by means of an automatic dialing system, indicated the reasons why plaintiff believed defendant used an automatic dialing system, and specified the frequency and times of the calls), *R. & R. adopted*, 2018 WL 3117529 (N.D. Tex. June 25, 2018). Plaintiff's lack of specificity in his complaint is evidenced by his conclusory statement that Navient "violated the law as [it] unlawfully engaged in this practice attempting to collect a debt during the requisite statutory period under the law between the years of 2016 through 2020." Dkt. 120 at ¶ 104. This simple recitation of the elements of a TCPA violation without any accompanying specific factual allegations is simply not sufficient to state a claim. *See Bell Atl.*

*Corp. v Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). Therefore, the Court recommends that Plaintiff's TCPA claim against Navient be dismissed with prejudice.

### 4. *Invasion of Privacy by Intrusion*

Navient next argues that Plaintiff's invasion of privacy claim is time-barred and fails to state a claim upon which relief can be granted. *See* Dkt. 123 at 11–12. To state a claim for relief, Plaintiff must allege facts to show the following two elements: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Cherkaoui v. Santander Consumer USA, Inc.*, No. 4:13-cv-467, 2013 WL 12328769, at *2 (S.D. Tex. June 7, 2013) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)). "The intrusion must also 'be unreasonable, unjustified, or unwarranted.'" *London v. Gums*, No. H-12-3011, 2014 WL 546914, at *12 (S.D. Tex. Feb. 10, 2014) (quoting *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 253 (Tex.App.—Houston [1st Dist.] 1993, writ denied)). Texas courts have generally required that an "intrusion on seclusion" invasion of privacy claim plead factual allegations of a physical invasion of the plaintiff's property or, in the alternative, eavesdropping through wiretaps, microphones, or spying. *See Walters v. Blue Cross and Blue Shield of Tex., Inc.*, No. 3:21-cv-981, 2022 WL 902735, at *4 (N.D. Tex. Mar. 28, 2022) (collecting cases); *see also Kelly v. Quicken Loans Inc.*, No. 3:19-cv-2668, 2020 WL 1915694, at *9 (N.D. Tex. Apr. 18, 2020) (collecting cases); *Graham v. JPMorgan Case Bank, Nat. Ass'n*, No. 4:13-cv-1410, 2015 WL 4431199, at *19 (S.D. Tex. July 15, 2015). However, in *Household Credit Services, Inc. v. Driscol*, the El Paso Court of Appeals found that a debt collector invaded the plaintiff's privacy by intrusion on seclusion because the evidence at

trial suggested the debt collector called the plaintiff at work and at home several times a day early in the morning and late at night, would not stop calling after the plaintiff filed a certified letter to stop calling her at work, used profanity, and threatened the plaintiff with violence. 989 S.W.2d 72, 84–85 (Tex.App.—El Paso 1998, pet. denied); *see also London*, 2014 WL 546914, at *12 (finding "the number of harassing phone calls coupled with the threat of jail was unreasonable and would be highly offensive to a reasonable person.")

In the Fourth Amended Complaint, Plaintiff alleges that Navient "unreasonably and maliciously used telephonic methods to harass the Plaintiff, his family members, and peers over defaulted student loan debts allegedly owed to the federal government and/or private banking institutions and in many attempts to unlawfully collect on the subject student loans allegedly owed by the plaintiff." Dkt. 120 at ¶ 112; *see also id.* at ¶ 42. Additionally, Plaintiff asserts that Navient's "actions were intentional, willful, and pervasive such that a reasonable person would find the [D]efendant's actions to be unreasonable and egregiously offensive." *Id.* at ¶ 112.

Like his TCPA claim, Plaintiff's complaint is bereft of factual allegations regarding the nature, frequency, and timing of the phone calls that he alleges gave rise to his invasion of privacy claim. Although Plaintiff summarily alleges Navient "unreasonably and maliciously used telephonic methods to harass" him, he provides no specific facts supporting his allegation. *Id.* There is no allegation that the calls were numerous, happened at odd times of day, and/or included threats or use of profanity. Plaintiff's empty allegations that merely make legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Therefore, the Court recommends that Plaintiff's "intrusion on seclusion" invasion of privacy claim against Navient be dismissed with prejudice.

###### 5. *FCRA Claim*

Finally, Navient argues that Plaintiff's FCRA claim under 15 U.S.C. § 1681s-2(b) fails to state a claim upon which relief can be granted. *See* Dkt. 123 at 12–14. To prevail under § 1681s-2(b), Plaintiff must allege four elements: (1) Navient provided inaccurate credit information about Plaintiff to a consumer reporting agency; (2) Plaintiff notified a consumer reporting agency that information in his credit report was inaccurate; (3) the consumer reporting agency notified Navient of the dispute; and (4) after receiving this notice, Navient failed to conduct a reasonable investigation and notify the consumer reporting agency to correct the reporting errors. *See Schoch v. Wells Fargo Home Mortg.*, No. 4:16-cv-619, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *R. & R. adopted*, 2017 WL 2312079 (E.D. Tex. May 26, 2017).

In a prior ruling regarding Plaintiff's Second Amended Complaint, the Court determined that Plaintiff "failed to sufficiently allege that Navient was under a duty to investigate under Section 1681s-2(b)." *See* Dkt. 85 at 2. Specifically, the Court found that Plaintiff's Section 1681s-2(b) claim was "devoid of any allegation that the Credit Bureaus contacted Navient regarding [Plaintiff's] dispute as required to state a claim." *Id.* at 3. The Court further noted that Plaintiff's allegations that Trans Union "verified the information *related to MGA*" were insufficient to show that Trans Union contacted Navient or that Navient was otherwise made aware of the dispute. *See id.* The Court granted Plaintiff leave to amend his Section 1681s-2(b) claim, but indicated that Plaintiff's amended pleading "must sufficiently allege that the Credit Bureaus notified Navient of the disputed information in order to plausibly state a claim against Navient under Section 1681s-2(b)." *Id.* at 3.

In the Fourth Amended Complaint, Plaintiff alleges that after he filed disputes with the Credit Bureaus in 2019, the Credit Bureaus notified Navient of the disputes "on or about November

20, 2019, pursuant to § 1681i(a)(2) based on the [Credit Bureaus'] admissions in their responsive updates to . . . [P]laintiff on or about November 23, 2019 and November 25, 2019." *See* Dkt. 120 at ¶ 95. Plaintiff alleges that after filing formal disputes on November 20, 2019, at least two Credit Bureaus (Trans Union and Equifax) responded on November 25, 2019, that "they had deleted or corrected the disputed items related to the Navient accounts. *See id.* at ¶¶ 48–49. But when Plaintiff later checked his credit reports to verify that the Navient accounts were deleted, he discovered that the accounts still appeared on his reports. *Id.* at ¶ 52. As a result, Plaintiff claims Navient "knowingly failed to perform according to [its] lawful duty to investigate the plaintiff's disputes and to review all relevant information provided by the [Credit Bureaus]." *Id.* at ¶ 95. Plaintiff further alleges that Navient "continued transmitting to the [Credit Bureaus] erroneous, inaccurate, and outdated credit file information." *Id.*

At first glance, the above allegations appear to be sufficient to meet the Court's prior directive. Significantly, Navient does not argue in its Motion to Dismiss that the above allegations do not satisfy the notice element, i.e., that the "Credit Bureaus contacted Navient regarding [Plaintiff's] dispute." *See* Dkt. 85 at 3. Instead, Navient's Motion points to an exhibit Plaintiff attached to his Third Amended Complaint, which Navient claims shows that all disputed items with respect to Navient were deleted from Plaintiff's credit report in November 2019. *See* Dkt. 123 at 13. In light of this exhibit, Navient argues that Plaintiff cannot plausibly allege the fourth element of a Section 1681s-2(b) claim—i.e., that after receiving notice, Navient failed to conduct a reasonable investigation and contact the Credit Bureaus to correct the reporting errors. *See id.* at 12; *see also Schoch*, 2017 WL 2385626, at *4. As stated earlier, the Court will not consider the exhibits attached to prior complaints. Be that Plaintiff may be attempting to avoid dismissal by deleting exhibits he previously relied upon, the exhibit to which Navient points is not attached to

his Fourth Amended Complaint. Therefore, the Court recommends denying Navient's Motion to dismiss Plaintiff's Section 1681s-2(b) claim.

### 6. Recommendation

Based on the foregoing, the Court recommends Navient's Motion (Dkt. 123) be granted in part and denied in part. Specifically, the Motion should be denied as to Plaintiff's FDCPA and Section 1681s-2(b) FCRA claim. The Motion should be granted as to the following claims: Plaintiff's defamation/libel claim, TCPA claim, and "intrusion on seclusion" invasion of privacy claim.

As the Court has discussed in prior orders issued in this case, a *pro se* plaintiff should ordinarily be allowed to amend his complaint before claims are dismissed with prejudice. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768. Plaintiff has already amended his complaint four times in this case. The Court finds that Plaintiff has pled his best case and, under the circumstances, it would be inappropriate to grant Plaintiff leave to amend again. "[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller*, 342 F.3d at 567 (citation omitted) (internal quotation marks omitted). Therefore, the Court recommends denying Plaintiff an opportunity to amend his dismissed claims. Plaintiff's defamation/libel claim, TCPA claim, and "intrusion on seclusion" invasion of privacy claims should be dismissed with prejudice.

## IV.    <u>RECOMMENDATION</u>

Based on the foregoing reasons, the Court recommends:

1. Navient's Motion to Dismiss Plaintiff's Fourth Amended Complaint or Strike Impermissible Claims (Dkt. 123) be **GRANTED IN PART and DENIED IN PART** as follows:

    a. Navient's Motion should be granted as to Plaintiff's defamation/libel claim, TCPA claim, and "intrusion on seclusion" invasion of privacy claim. These claims should be dismissed with prejudice.

    b. Navient's Motion should be denied as to Plaintiff's FDCPA claim and Section 1681s-2(b) FCRA claim.

2. ECMC's Motion to Dismiss Plaintiff's Fourth Amended Complaint or in the alternative, Motion to Strike (Dkt. 126) be **GRANTED IN PART and DENIED IN PART** as follows:

    a. ECMC's Motion should be granted with respect to Plaintiff's defamation/libel claim and denied as to all remaining arguments raised in the Motion;

    b. Plaintiff's defamation/libel claim as to ECMC should be dismissed with prejudice.

Within fourteen (14) days after service of magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

## V.  ORDER

**IT IS ORDERED** that, in addition to serving Plaintiff by certified mail, return receipt requested, the Clerk's Office shall email a copy of this Order and Report and Recommendation to Plaintiff at svowens77@gmail.com.

**So ORDERED and SIGNED this 9th day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE