## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **SEAN V OWENS** | § | |
| | § | |
| **v.** | § | **NO. 4:20-CV-00665-SDJ-BD** |
| | § | |
| **TRANSUNION, LLC,** *et al.* | § | |

### MEMORANDUM OPINION AND ORDER

Defendant Trans Union, LLC, moved for a sanction of attorneys' fees against pro se plaintiff Sean Owens. Dkt. 296. The motion will be denied.

### BACKGROUND

Earlier in this litigation, another defendant moved for sanctions against Owens, arguing that he had engaged in vexatious and harassing conduct and used abusive language toward opposing counsel. Dkt. 172. The court denied that motion in January of last year but noted that "Owens should not . . . construe the denial of [the] motion as approval of his conduct . . . . [E]ven when the parties or their attorneys disagree, they must treat each other with respect and courtesy." Dkt. 232 at 3.

Several months later, Owens moved to compel discovery. Dkt. 264. Because he had not complied with the court's procedures for resolving discovery disputes laid out in the scheduling order, the court struck his motion. Dkt. 268. That order instructed the parties to contact chambers if they have a discovery dispute, *id.*, which they did, so the court ordered Owens and Trans Union to confer face-to-face, Dkt. 270. The court also ordered the parties, if they were unable to resolve their issues, to file a joint submission outlining the remaining disputes. *Id.* at 2–3.

Trans Union filed a unilateral submission stating that Owens had engaged in misconduct by refusing to confer face-to-face. Dkt. 278 at 39. The submission requested attorneys' fees. *Id.*

According to the submission and Trans Union's motion for sanctions, in May 2025, Owens stated that his son had discovered boxes in the Michigan home of Owens's former wife that might

contain documents responsive to its discovery requests. Dkts. 278-8 at 3. According to Trans Union, Owens agreed to have his son look through the boxes. *Id.*

Later that month, Owens supplemented his discovery responses and sat for a deposition. Dkts. 278-9, 278-10, 278-11. During his deposition, Owens said that his son was still looking through the boxes but had not found anything yet. Dkt. 278-11 at 5. He also noted that he "may have some" responsive documents. *Id.* at 14. Trans Union's counsel, Paul Myers, emailed Owens proposing that they meet and confer on June 11, but Owens refused to do so. Dkt. 278-20 at 3.

The next month, Trans Union notified the court of its dispute with Owens, and the court issued its previously noted face-to-face order the same day. Dkt. 270. On July 8, Myers emailed Owens again, suggesting that they confer at 1:00 p.m. on July 11. Dkt. 278-21 at 4–5. Owens responded that he was not available that day, that Myers did not "get to randomly pick a date for [them] to meet without first inquiring of [his] availability," and that he did not expect to have anything new to say at the conference. Dkt. 278-15 at 5. But he added that he was available during the last week of July and that Myers was "welcome to propose dates during that week." *Id.* Myers then offered to meet at 8:00 a.m. or 9:00 a.m. on July 15 and on the morning of July 16 (the day the joint submission was due). *Id.* at 4. Owens responded:

> The court's ORDER states the guidelines for parties to follow regarding discovery disputes. **COURTS DO NOT DETERMINE WHEN PARTIES CONDUCT THEIR FACE-TO-FACE/MEET-AND-CONFER!!! I DO NOT WORK FOR YOU!! I AM NOT YOUR EMPLOYEE!! I DO NOT ANSWER TO YOUR DEMANDS BASED ON WHEN YOU WANT TO DO SOMETHING!!**
>
> You *did not* inquire when I'd be available to confer. Your email on July 2, 2025, was **IMPROPER!**
>
> **Discovery closed on July 3, 2025, and a pending motion to extend has no force or effect on that date.** You cannot engage in discovery or make requests of a party once discovery closes!! Your communication qualifies for Rule 16(f) sanctions for violating the scheduling order. The court did not grant the defendants' motion until **July 9, 2025.** Therefore, I had no legal obligation to respond or illegally entertain your post-discovery expectation because it is moot by operation of law. **Equally, your July 8, 2025, email, deserved no response because you continued to**

2

**violate federal rules, local rules, and the initial amended scheduling order post-discovery. As such, no legal communications took place.**

If the court had granted the motion to extend prior to your email communications, your request to confer would still be YOUR PROPOSED dates to confer. And, your proposed timeline to *"exchange the list of issues and authorities by noon on Friday, July 11, 2025"* has nothing to do with the court because the court did not establish ANY dates within its ORDER which you are trying to falsely infer. Whatever the court has available on July 14, 2025, is based on their schedule and based on what YOU suggested to them. In fact, any and all communications that you've had with chambers is considered ex-parte communications! You cannot do that!!!

You keep lying and trying to force your games on me. I will not tolerate that from you or anybody! I have not reviewed nor have I had the time to do anything related to your information. As such, the date that we must confer has not been mutually agreed upon in good faith or determined. This is not a one-sided process and the court has stated that you will be sanctioned if you fail to follow its order.

I am not available, as previously stated last Friday, until the last week of July. Hence, that is the reason why I preferred July 28 to mediate based on my schedule. Therefore, and again, you can propose dates during the last week of July or anytime thereafter.

*Id.* at 2–3 (emphasis in original).

On the day the parties' joint submission was due, Owens served supplemental discovery responses. Dkts. 278-18, 278-19. On August 7, Owens and Trans Union met, Dkt. 296 at 5, and a week later the court held a hearing on their remaining disputes, Minute Entry for Aug. 15, 2025. The court resolved those disputes during the hearing, and it accepted Owens's representation that he had produced all responsive documents in his possession, including all responsive documents from the Michigan boxes. *Id.*

At the end of the hearing, the court mentioned the language that Owens had used in the email to Myers quoted above. *Id.* The court recounted its earlier admonishment of Owens for hostile and abusive language, Dkt. 232 at 3, then stated:

As we're sitting here today in the courtroom, Mr. Owens, I don't see any abusive language that you're using. But then I look at the submissions that you're making, including emails that are attached to filings that came after the order that I was just reading from, and I see all caps, I see red, exclamation marks. That's the kind of language I was talking about in that previous order. . . . Let me read you some: This is from Docket 278-15 at page 2. . . . [The court read parts of the email quoted above.] . . . That's the language I'm talking about. That's not appropriate. You

3

wouldn't come in here and say that, I don't think; it doesn't seem like you would. So, to the extent that there was any uncertainty about what my order was saying would be inappropriate language, I've just read you an example of it. And again, by continuing to file language like that, you're risking an award of sanctions.

Minute Entry for Aug. 15, 2025. Owens stated that, in his view, the quoted passage responded to what he saw as inappropriate language from Myers. *Id.* On its inquiry, the court told Trans Union that it was free to file a motion for sanctions as a separate motion. *Id.*

Trans Union did so, seeking its relevant attorneys' fees. Dkt. 296. Owens did not formally respond but moved to strike the motion. Dkt. 303; *see* Dkts. 308 (response), 310 (reply).

## LAW

### I.  **Federal Rule of Civil Procedure 37**

Rule 37 authorizes the court to impose discovery sanctions. Subsection (a) of that rule authorizes parties to file motions to compel discovery and authorizes an award of attorneys' fees to the party that prevails on a motion to compel:

(a) Motion for an Order Compelling Disclosure or Discovery.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

. . .

(5) *Payment of Expenses; Protective Orders.*

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Rule 37(b) permits a court to impose sanctions for a party's failure to comply with a court order:

(b) Failure to Comply with a Court Order.

. . .

(2) *Sanctions Sought in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . .

(C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

A court "has broad discretion in fashioning its sanction" under that rule. *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019), *as revised* (June 6, 2019). The Fifth Circuit generally "require[s] the district court to determine the sanctions are 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Id.* (quoting *Compaq Comput. Corp.*

*v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004)). But to support an award of litigation-ending sanctions, a "district court must make four additional findings . . . : (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Id.* at 758–59 (quoting *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994)).

The Fifth Circuit categorizes Rule 37 motions under 28 U.S.C. § 636(b)(1)(A), *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016–17 (5th Cir. Unit A 1981). That provision permits a magistrate judge to issue an order, subject to review for clear error, as long as the sanction imposed does not dismiss a claim or defense. *Brown v. Bridges*, No. 12-cv-4947-P, 2015 WL 410062, at *3 (N.D. Tex. Jan. 30, 2015).

## II. Inherent Authority

In addition to exercising power vested in it by rule, a court may sanction a party or counsel based on its inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47–50 (1991). The inherent power to sanction should be exercised "with great restraint and caution." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). The court should impose only those sanctions "reasonable and appropriate" to "achieve the orderly and expeditious disposition" of the court's docket. *Id.*

## DISCUSSION

## I. Rule 37

As noted, Rule 37(a)(5)(A) provides that

> [i]f [a motion to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

A fee award under that rule is available only to a party that prevails on a motion to compel. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 585 (N.D. Tex. 2018). Because Trans Union did not file a motion to compel, much less prevail on one, Rule 37(a)(5)(A) cannot support a sanctions award.

Trans Union did not invoke Federal Rule of Civil Procedure 37(b)(2), but that Rule also authorizes a fee award in certain circumstances:

> [i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

In other words, fees are mandatory unless the litigant's conduct was substantially justified. *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 n.4 (5th Cir. 2013). Discovery conduct is "substantially justified" if "it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Keplar v. Google, LLC*, 346 F.R.D. 41, 53 (N.D. Tex. 2024) (quoting *SEC v. Kiselak Cap. Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012)).

By failing to timely confer with Trans Union and contribute to a joint submission, Owens violated the court's order to confer. Dkt. 270. But Rule 37(b)(2) applies only when a party violates "an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2); *see Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011). The order at issue here did not instruct either party to turn over any documents, sit for a deposition, answer an interrogatory, or otherwise provide or permit discovery. It instead instructed the parties to meet, confer, and prepare a joint submission. *See Shumpert v. City of Tupelo*, No. 1:16-cv-120-SA-DAS, 2017 WL 6803364, at *1 (N.D. Miss. June 7, 2017) (finding that a "Case Management Order" that "describes a procedure to be followed before filing a motion for a discovery-related order" was not an "an order to provide or permit discovery"), *aff'd,* 905 F.3d 310 (5th Cir. 2018). Sanctions are therefore not available under Rule 37(b)(2) in this scenario.

## II.  Inherent Power

The other source of authority that Trans Union proposes is the court's inherent power to impose sanctions. Dkt. 296 at 6. A court may sanction a party or his counsel based on its inherent power even without an authorizing rule. *Chambers*, 501 U.S. at 47–50. "Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution." *Nat. Gas Pipeline Co.*, 86 F.3d at 467. Any sanctions awarded based on the court's inherent power must be "reasonable and appropriate" to "achieve the orderly and expeditious disposition" of the case. *Id.*

Although this is a close case, an exercise of the court's inherent power to sanction is not warranted here. When viewed in proper context, Owens's conduct does not sufficiently support a finding of bad faith. And at the hearing, the court admonished Owens but declined to impose sanctions for the abusive language Trans Union highlights.

### A.  Owens's conduct

Trans Union's motion offers a narrative of events leading up to and following the court's order to confer. Dkt. 296 at 2–6. In Trans Union's view, Owens evaded his discovery obligations and willfully disobeyed the court's order. However, Trans Union's exhibits, which were originally attached to its unilateral submission, Dkt. 278, tell a slightly different story. Viewing those exhibits from Owens's perspective, his conduct was not sufficient to merit an exercise of the court's inherent power to sanction, in part because Trans Union contributed to the parties' joint failure to comply with the face-to-face order.

Trans Union first asserts that Owens's second supplemental discovery responses "did not comply with the Rules or the parties['] meet and confer agreements. Instead, [Owens] added new objections and argumentative responses." Dkt. 296 at 2. That is just a restatement of the parties' discovery disputes, which were resolved at the hearing. Sanctions are not appropriate just because the parties had a discovery dispute.

Trans Union then asserts that, during his deposition, Owens "testified, for the first time, that he had boxes in his garage containing responsive documents and information but had not fully

reviewed them." Dkt. 296 at 3. In fact, Owens testified that he "may have some" responsive documents. Dkt. 296-3 at 5. And at the hearing, Owens told the court that he had produced all responsive documents in his possession and that there were no more responsive documents in the boxes. Minute Entry for Aug. 15, 2025. The court accepted that representation as true. *Id.*

Trans Union also notes that, on June 4th, it reached out to Owens to schedule a conference, and he refused to do so. Dkt. 296 at 3. But at that point, Owens and Trans Union had already conferred once about their disputes and the court had not yet ordered the parties to meet face to face. Dkt. 268. Although parties should always confer regarding discovery disputes, Trans Union has not identified a rule or order that required Owens to do so at that time. Owens's June 4th email does not contemplate a discovery motion, Dkt. 296-4 at 2, but to the extent that it could be construed as a failure to satisfy meet-and-confer requirements before his June 20th motion to compel, Dkt. 264, that likewise does not support an award of attorneys' fees. Arguably, Owens had already satisfied those requirements during previous conferences, and the court already imposed the penalty it would ordinarily impose for failure to satisfy those requirements—it struck the motion. Dkt. 268.

Trans Union next asserts that, "without providing the agreed-upon supplementation, Plaintiff withdrew his agreement to appear for his second deposition." Dkt. 296 at 3. But at the hearing, Owens explained that, when he agreed to sit for a second deposition, he was unaware of Federal Rule of Civil Procedure 30(d)(1), which provides that, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Owens is not a lawyer and withdrew his agreement when he learned of that rule. Minute Entry for Aug. 15, 2025. Although the court determined that additional time was warranted, it was not unreasonable for Owens to insist on compliance with the Federal Rules of Civil Procedure.

Trans Union also states that, after the court ordered the parties to confer, Owens "[o]n numerous occasions . . . refused to exchange the information and conduct the face-to-face meeting required by the Court's Order." Dkt. 296 at 4. A copy of the exchange is attached to the motion and Trans Union's unilateral submission. Dkts. 278-15, 296-7. To be sure, Owens's language was

inappropriately abrasive. *See infra* Part II.B. But to say that Owens "refused" to meet and confer is to read the exchange only from Trans Union's perspective.

Myers told Owens, "I suggest we agree to exchange the list of issues and authorities by noon on Friday, July 11, 2025, and schedule the face-to-face meet and confer conference for 1:00 PM on Monday, July 14, 2025." Dkt. 296-7 at 5. Owens responded:

> Let's set things straight for the record. I am not available on Monday. Professionally, you don't get to randomly pick a date for us to meet without first inquiring of my availability, in good faith, which you did not do. The extension of discovery was by your doing. Therefore, you've subjected yourself to scheduling conflicts by all parties and nobody is required to just drop their professional and personal obligations on your short notice. Therefore, I have no availability until the last week of July. As such, you are welcome to propose dates during that week.

*Id.* at 5. In his response to that email, Myers told Owens: "I will make myself available to conduct the meet and confer conference via Zoom beginning at 8:00 AM or 9:00 AM on Tuesday, July 15, 2025. However, you must agree, to also be available on the morning of July 16, 2025, to finalize the joint submission." *Id.* at 4. Owens's next email was the one quoted in the background section of this order. It ends with "I am not available, as previously stated last Friday, until the last week of July. Hence, that is the reason why I preferred July 28 to mediate based on my schedule. Therefore, and again, you can propose dates during the last week of July or anytime thereafter." *Id.* at 2.

Again, much of the language Owens used in the balance of that message was unprofessional and inappropriate. But extracting only the substance, the parties' exchange proceeded as follows: Myers suggested a specific time and date to meet and confer. Owens said that he was not available on that date and would not be available until the last week of July. Myers then suggested a different specific date and time (not during the last week of July), but only if Owens would also meet the next day. Owens reiterated that he was not available until the last week of July.

That exchange reflects that either party could have requested an extension of the deadline in the court's face-to-face order. The blame does not lie solely with Owens.

Finally, Trans Union claims that, on the day the parties' joint submission was due, Owens "*strategically* served his third supplemental discovery responses." Dkt. 296 at 4. Trans Union does

not explain why it emphasized that word. But in Owens's view, the third supplemental discovery responses resolved the parties' outstanding disputes, mooting any need for further court involvement. Dkt. 281 at 2, 4. And indeed, the responses did add a meaningful amount of new information, Dkts. 278-18, 278-19, facilitating resolution of the parties' dispute at the hearing, Minute Entry for Aug. 15, 2025. Giving Owens the benefit of the doubt, that was his intention. *See Legion Sys., LLC v. Valiant Glob. Def. Servs., Inc.*, No. 8:20-cv-2321-KKM-MRM, 2022 WL 18493478, at *4 (M.D. Fla. Dec. 22, 2022) (noting that "the Federal Rules of Civil Procedure . . . require and assume a good-faith effort to resolve any discovery disputes"); *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, No. 2:03-cv-294 DAK, 2005 WL 318784, at *7 (D. Utah Feb. 9, 2005) (noting that "the court assumes the good faith of all litigants before it" even as it "urges both sides to renew their efforts in cooperating with each other").

Trans Union, of course, did not agree with Owens's view of his third supplement. Dkt. 287. But that does not alone warrant sanctions. If anything, the fact that Owens believed his third supplement would moot the parties' discovery dispute supports a conclusion that his failure to confer was justified.

Everything discussed so far was brought to the court's attention before the hearing through Trans Union's unilateral submission, Dkt. 278, Owens's response to that submission, Dkt. 281, and Trans Union's reply, Dkt. 287. At the hearing, the parties discussed their dispute appropriately and productively, and their outstanding issues were resolved without the need for a motion to compel. Minute Entry for Aug. 15, 2025.

The record here reflects an unfortunate level of animosity between Owens and Trans Union. The court has done its best to lower the temperature and explain its expectations. It will not at this point take the next step of using its inherent power to impose sanctions based on Owens's litigation conduct.

### B.  Owens's language

Owens's rhetoric is a different matter. As the court has noted in the past, even when the parties or their attorneys disagree, they must treat each other with respect and courtesy. *See* Loc. R. AT-3;

11

*Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003). The court has specifically ordered Owens to "refrain from using hostile or abusive language in his filings with this court and his correspondence with opposing counsel." Dkt. 232 at 4. Failure to comply with that order subjects Owens to sanctions. *Chambers*, 501 U.S. at 43–51.

Owens's language corresponding with Myers, particularly that in his July 14 email, is hostile and abusive and violates the order that he refrain from using such language. However, the court already addressed that issue at the hearing. Minute Entry for Aug. 15, 2025. It again chose to give Owens the benefit of the doubt, allowing that the meaning of "hostile and abusive" could be unclear, especially to a nonlawyer. So the court read from Owens's email and advised him that, "to the extent that there was any uncertainty about what my order was saying would be inappropriate language, I've just read you an example of it." *Id.* But it declined to impose sanctions, instead warning Owens that if he continued to use that kind of language, he would be sanctioned. Trans Union has not presented a reason to revisit that ruling.

*   *   *

In short, the events described in Trans Union's motion do not warrant sanctions at this time. But this order should stand as another warning to Owens: The order that he "refrain from using hostile or abusive language in his filings with this court and his correspondence with opposing counsel," Dkt. 232 at 4, stands, and the court has pointed out an example of "hostile or abusive" language.

## CONCLUSION

It is **ORDERED** that Trans Union's motion for attorneys' fees, Dkt. 296, is **DENIED**.

So **ORDERED** and **SIGNED** this 11th day of February, 2026.



Bill Davis
United States Magistrate Judge