**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **SEAN V OWENS** | § | |
| | § | |
| **v.** | § | **NO. 4:20-CV-00665-SDJ-BD** |
| | § | |
| **TRANSUNION, LLC, *et al.*** | § | |

**MEMORDANDUM OPINION AND ORDER**

Proceeding pro se, Sean Owens sued TransUnion, LLC; Navient Solutions, LLC; Educational Credit Management Corporation ("ECMC"); and three other defendants who are no longer parties to the case. Dkts. 1 (original complaint), 120 (operative complaint); *see* Dkts. 87 (order dismissing Owens's claims against former defendant Michigan Guaranty Agency ("MGA")), 313 (stipulation of dismissal as to former defendant Experian Information Solutions, Inc.), 332 (stipulation of dismissal as to former defendant Equifax Information Services LLC). This order addresses several motions for sanctions and motions regarding whether documents produced in discovery and attached to court filings should be sealed. Dkt. 329 (Navient's motion including a request for sanctions against Owens); *see* Dkts. 338 (Owen's response), 339 (Navient's reply), 343 (show-cause order issued to Owens), 369 (Owens's brief in response to the show-cause order); Dkt. 356 (TransUnion's first motion to seal); *see* Dkts. 357 (sealed document), 358 (redacted document), 367 (response), 379 (reply); Dkt. 359 (ECMC's motion to seal); *see* Dkts. 360 (sealed document), 366 (response); Dkt. 361 (Navient's motion to seal); *see* Dkts. 368 (response), 374 (reply); Dkt. 380 (TransUnion's second motion to seal); *see* Dkts. 381 (redacted document), 382 (sealed document); Dkt. 336 (Owens's motion for sanctions against TransUnion); *see* Dkts. 340 (response), 346 (reply), 363 (sur-reply); Dkt. 377 (Owens's motion for sanctions against Navient); *see* Dkts. 393 (response), 398 (reply); Dkt. 419 (Owens's amended motion for sanctions against ECMC); *see* Dkts. 420 (response), 421 (reply); Dkt. 378 (Owens's superseded motion for sanctions against ECMC); *see* Dkts. 394 (response), 399 (reply).

The court will deny Owens's motions for sanctions and dismiss his superseded motion for sanctions. It will grant the defendants' motions to seal and Navient's request for sanctions against Owens. It will call for briefing on the amount of fees incurred in connection with Owens's sanctions motions, such that the court may determine the total amount Owens must pay the defendants.

## BACKGROUND

### I. The Court's Warnings to Owens During the First Several Years of Litigation

Owens has engaged in misconduct throughout this years-long litigation. The court's first occasion to warn him came less than four months after he filed his original complaint in September 2020. Dkt. 1. TransUnion and other defendants had moved for an extension of time to file replies in support of a joint motion for judgment on the pleadings and for a stay. Dkt. 45; *see* Dkt. 46 (Owens's response in opposition to the extension motion). The court granted the requested extension, noting that Owens's response "d[id] not address the substance of [the] Defendants' request" and instead "contain[ed] a baseless allegation that [the] Defendants ha[d] 'created a pattern and practice of making false or misleading statements.'" Dkt. 47 at 1–2 (quoting Dkt. 46 at 1). The court also informed Owens that his response did not comply with the local rules and instructed him to follow those rules going forward. *Id.* at 2.

The next year, the court recommended that the joint motion for judgment on the pleadings be granted in part and denied in part. Dkt. 78; *see* Dkt. 85 (memorandum adopting the recommendation in part and modifying it in part). In the report making that recommendation, the court gave Owens another warning—this time for engaging in "shotgun pleading" in a complaint rife with "conclusions adorned with hyperbolic adjectives and adverbs." Dkt. 78 at 16. And several months later, at a case-management conference, the court reminded Owens that, even though he has disputes with the defendants, he should not include "hostile language" in his arguments and that "disparaging language . . . won't be tolerated by the court." Audio recording of case-management conference, at 2:22:05–2:23:40 p.m. (Dec. 8, 2021).

A few months after that, Owens notified the court of his intent to move for sanctions against Navient and ECMC, Dkt. 153, which he later did, Dkt. 168. Owens's sanctions motion asserted that Navient and ECMC had made "willfully deceitful omissions and material misrepresentations of fact related to [their] presentment of papers to" the court and had "engaged in dilatory schemes to delay the proceedings in this case." *Id.* at 1. The motion attached communications among Owens and opposing counsel that reflected Owens's misunderstanding of common legal practice and parlance, rather than deceit by opposing counsel. Dkts. 168-1, 168-2. In those emails, Owens accused opposing counsel, among other things, of having an unceasing "propensity for lying," Dkt. 168-1 at 5, and of being "disgraceful to the profession" of law, Dkt. 168-2 at 4; *see also* Dkt. 168-1 at 5 (characterizing "the magistrate[ judge]'s report" as "horribly bungled"). In response to that motion, ECMC filed its own motion for sanctions, asserting that it was Owens whose vexatious and harassing conduct was sanctionable. Dkt. 172.

The court denied each of those motions. Dkts. 216, 232. But it warned Owens that he "should not . . . construe the denial of ECMC's motion as approval of his conduct," adding that "even when the parties or their attorneys disagree, they must treat each other with respect and courtesy." Dkt. 232 at 3. It told Owens that "abusive language toward the court, the parties, or their attorneys will not be tolerated." *Id.*

## II. The Court's Protective Order and the Parties' Discovery Disputes

In May 2025, the court granted the defendants' opposed motion for a protective order, Dkt. 245, noting that the defendants had adequately described "the time and money [they] have invested in their internal systems and the risk of harm to their businesses that would arise if the information [Owens] requested in discovery were disclosed to competitors," Dkt. 258 at 1–2. The resulting protective order allowed the parties to mark documents as "confidential." Dkt. 259 at 2. Confidential materials could be disclosed only to approved people unless the designation was successfully challenged through specified procedures. *Id.* at 4–5. The protective order also noted that, "[i]f any party wishes to submit to the Court information that the party seeks to keep under seal—for instance, information designated as Confidential Information—the party must also file a

motion to seal." *Id.* at 7 (explaining that any such motion would be evaluated "in accordance with the judicial-record sealing standard"). The order warned that it would "be enforced by the sanctions set forth in Federal Rule of Civil Procedure 37(b)." *Id.* at 8.

A few weeks later, Owens moved to compel discovery. Dkt. 264. Because he had not complied with the procedures for resolving discovery disputes laid out in the court's scheduling order, the court struck that motion, instructing the parties to contact chambers if they had a discovery dispute. Dkt. 268. After the parties did so, the court ordered Owens and TransUnion to confer face-to-face—and, if they were unable to resolve their disputes by agreement, file a joint submission outlining the disputes still at issue. Dkt. 270 at 2–3.

In response, TransUnion filed a submission stating that Owens had engaged in misconduct by refusing to confer face-to-face. Dkt. 278 at 39. The submission requested attorneys' fees. *Id.* The court set a hearing on the ongoing discovery dispute and ordered Owens and TransUnion to notify it if any of those disputes were resolved in advance of the hearing. Dkt. 285. Before the hearing, Owens moved for a protective order, Dkt. 289, and TransUnion filed a notice advising the court of outstanding issues and reiterating its request for fees, Dkt. 290.

A letter from TransUnion's counsel included in the first submission's appendix asserted that, in May 2025, Owens stated that his son had discovered boxes in the home of Owens's former wife that might contain responsive documents and agreed to have his son look through them. Dkts. 278-8 at 3, 296 at 3. Later that month, Owens supplemented his discovery responses and sat for a deposition during which he stated that his son was still looking through the boxes but had found nothing. Dkts. 278-9, 278-10, 278-11 at 5. But Owens also noted that he "may have some" responsive documents. Dkt. 278-11 at 14.

The next month, TransUnion's counsel emailed Owens, proposing that they meet and confer a week later, but Owens refused. Dkt. 278-20 at 3. Several weeks after that, TransUnion notified the court of its dispute with Owens, resulting in the face-to-face order already mentioned. Dkt. 270. When TransUnion's counsel tried again to schedule a meeting in accordance with that order, Owens responded: "you don't get to randomly pick a date for us to meet without first inquiring of

my availability." Dkts. 278-15 at 5, 278-21 at 4–5. When TransUnion's counsel offered more times, Owens responded, in part:

> The court's ORDER states the guidelines for parties to follow regarding discovery disputes. **COURTS DO NOT DETERMINE WHEN PARTIES CONDUCT THEIR FACE-TO-FACE/MEET-AND-CONFER!!! I DO NOT WORK FOR YOU!! I AM NOT YOUR EMPLOYEE!! I DO NOT ANSWER TO YOUR DEMANDS BASED ON WHEN YOU WANT TO DO SOMETHING!!**
>
> You *did not* inquire when I'd be available to confer. Your email on July 2, 2025, was **IMPROPER!**
>
> . . .
>
> You keep lying and trying to force your games on me. I will not tolerate that from you or anybody! I have not reviewed nor have I had the time to do anything related to your information. As such, the date that we must confer has not been mutually agreed upon in good faith or determined. This is not a one-sided process and the court has stated that you will be sanctioned if you fail to follow its order.
>
> I am not available, as previously stated last Friday, until the last week of July. Hence, that is the reason why I preferred July 28 to mediate based on my schedule. Therefore, and again, you can propose dates during the last week of July or anytime thereafter.

Dkt. 278-15 at 2–3.

Eventually, the parties did confer, Dkt. 296 at 5, and at the subsequent hearing on their discovery dispute, the court read from its earlier order, Dkt. 232, and the email message quoted in the previous paragraph, Audio recording of discovery hearing, at 2:42:15–2:46:20 p.m. (Aug. 15, 2025). The court advised Owens that his language towards opposing counsel in the email was inappropriate and that further disrespectful communication could result in sanctions. *Id.* Owens disagreed with the court's characterization of his language as hostile and explained his view that litigation is "war." *Id.* at 2:46:20–2:46:45 p.m. Two weeks later, TransUnion moved for recovery of its attorneys' fees based largely on matters addressed at the hearing. Dkt. 296.

Owens, however, was not deterred. A few months later, he filed a notice in which he accused ECMC of engaging in an "escalating pattern of dilatory conduct and discovery abuse" and "fabricat[ing] a discovery dispute" in "a deliberate attempt to mislead the Court." Dkt. 314 at 5.

Later that month, he filed a response to Navient's motion for an extension of time in which he described "the procedural imbalance that has characterized this litigation" and how, in his view, "[t]he Court continues to reward the defendants' gamesmanship predicated on delay, delay, and more delay, and consciously denies [him] adjudication of this case on the merits." Dkt. 323 at 2. Another filing spoke of ECMC's "remarkable arrogance" and "blissful ignorance." Dkt. 327 at 5.

The court eventually denied TransUnion's motion for fees, Dkt. 296, finding that the issues it raised had already been addressed. Dkt. 416 at 11–12. But the court again cautioned Owens about the language he used in the course of that dispute. *Id.* at 12.

**III. Navient's Sanctions Request and the Resulting Show-Cause Hearing**

After the court denied another motion requesting assessment of attorneys' fees against Owens, Dkt. 328, Navient filed an emergency motion asserting that Owens had violated the protective order by not moving to seal summary-judgment exhibits containing documents that had been marked as confidential in accordance with the protective order. Dkt. 329 at 2–3. The motion asked that the exhibits be struck and that Owens be sanctioned in the form of an order requiring him to pay Navient's attorneys' fees incurred as a result of his violation of the protective order. *Id.* at 4–6. The court temporarily sealed the confidential documents while it waited for Owens's response. Dkt. 331.

Owens objected to the court's order under Rule 72(a), calling it "very disturbing" because it purportedly demonstrated "the systematic pattern of gross bias [he] has been dealing with throughout this case," Dkt. 335 at 5, and accusing the court of failing to undertake "a *diligent* and *careful review*" of its protective order, *id.* at 6. He also filed a notice of his filing of a petition for a writ of mandamus that described the court's "bold and egregious departure from the norms of fair and unbiased adjudication" and suggested that the court's temporary sealing order was the product of racial animus. Dkt. 341 at 2–3; *see In re Owens*, No. 25-40789 (5th Cir. Jan. 30, 2026), Dkt. 32-1 (denying Owens's mandamus petition).

After considering the motion alongside Owens's response, Dkt. 338, Navient's reply, Dkt. 339, and Owens's sur-reply, Dkt. 342 (styled a "notice of clarification"), the court granted Navient's

motion and ordered Owens to appear and show cause why he should not be sanctioned for violating the protective order, Dkt. 343.

The show-cause order authorized Owens to file a brief before the sanctions hearing, Dkt. 343, and Owens did so, Dkt. 369. His brief asserted that it was incumbent on Navient to move to seal its confidential documents, that the court had acted improperly in sua sponte sealing the exhibits (an argument that had already been rejected, Dkt. 337), that the court lacks the authority to impose sanctions, that striking the documents would constitute dispositive relief, that Navient was acting in bad faith, and that the court was biased. Dkt. 369 at 2–6. Navient filed a statement asserting that an order requiring Owens to pay its attorneys' fees would be an appropriate sanction. Dkt. 372.

At the show-cause hearing, the court permitted Owens to testify and heard argument from him and Navient's attorney. Minute Entry for Jan. 5, 2026; *see* Dkt. 435 (hearing transcript). (ECMC's attorney attended the hearing but did not present argument when given the opportunity. Dkt. 435 at 25.) The court explained that the purpose of the hearing was to give Owens a chance to explain why he should not be sanctioned, why his conduct was substantially justified, and why the court should impose a lesser sanction than Navient's attorneys' fees. Dkt. 435 at 6–8, 18–20. Owens testified that the information contained in the confidential documents was already in his possession before the documents were designated as confidential. *Id.* at 9–12, 14–17. He argued that the documents therefore fell outside the scope of the protective order. *Id.* When the court asked Owens his view on whether a different part of the protective order applied to the documents, Owens responded that he was "not going to debate with [the court] about how contracts are interpreted" and "not going to argue semantics and the rules of grammar and English on something that is clear and unambiguous." *Id.* at 12–13. In discussing the legal standard that applies to motions to seal, he stated that "[n]obody's following the Fifth Circuit's standard. No one is adhering to it." *Id.* at 15.

The court gave Owens the opportunity to testify about any other facts that might not have been before it. *Id.* at 17. Owens described "Section II" of the protective order, Dkt. 259—which the court entered after considering a motion for its entry, Dkt. 245, a response, Dkt. 248, and five supplements to the motion, Dkts. 253, 254, 255, 256, 257; *see* Dkt. 258 (order granting the

motion)—as "a new fact that had not been presented to the Court," stating that he "d[id]n't know if the Court's read through that section" and that he "d[id]n't know how [the court was] missing the point." Dkt. 435 at 9, 17. When asked, Owens did not challenge the reasonableness of Navient's request for $2,046 in attorneys' fees, *see* Dkt. 373, or suggest any alternative sanction, Dkt. 435 at 19–22. He argued only that any sanction would be inappropriate. *Id.*

Navient's attorney argued that Owens violated the protective order and that Federal Rule of Civil Procedure 37(b)(2) instructs the court to impose fees under those circumstances. *Id.* at 22–25. Navient's attorney also argued that, even if Owens was correct that the documents at issue were improperly marked as confidential, the protective order required Owens to challenge that designation using the described procedures. *Id.*; *see* Dkt. 259 at 7 (discussing the duties of parties filing confidential documents).

The court again asked Owens whether he wanted to challenge the amount of fees Navient requested, rather than assert only that no fee award should be ordered. Dkt. 435 at 27–28. Owens again declined. *Id.*

**IV. TransUnion's Filing of Confidential Documents**

The show-cause hearing occurred as the parties were filing their summary-judgment briefing, and in the course of that briefing, the defendants moved to seal exhibits containing Navient's confidential information. Dkts. 356, 359, 361. Among those was exhibit 3 to TransUnion's motion for summary judgment, Dkt. 357, which TransUnion timely moved to seal, Dkt. 356. But TransUnion also filed the same documents as part of an exhibit to its response to Owens's motion for partial summary judgment. Dkt. 344-8 at 15–22. It did not move to seal that exhibit until more than three weeks later, when it asserted that it had inadvertently filed the documents without a motion to seal. Dkt. 380 at 1; *see* Dkts. 383 (Owens's "notice" arguing that sealing is unnecessary because the documents at issue do not, in his view, contain confidential information), 390 (Owens's "supplemental notice" responding to TransUnion's motion and arguing against the imposition of sanctions).

## V. Owens's Motions for Sanctions

Meanwhile, Owens filed motions for sanctions against each of the defendants. Dkts. 336, 377, 419; *see* Dkt. 378 (additional sanctions motion superseded by Dkt. 419).

As to TransUnion, Owens requested sanctions for filing motions for attorneys' fees that were purportedly "frivolous, legally baseless, and intended to delay and harass a pro se litigant." Dkt. 336 at 1. According to Owens, TransUnion's filing of a motion for attorneys' fees under Federal Rule of Civil Procedure 37 was frivolous because that rule must be connected to a discovery motion. *Id.* at 2–3. And it filed a frivolous response, he asserted, because TransUnion embedded in its response to an earlier motion to strike, Dkt. 308, a request for fees under 28 U.S.C. § 1927, which applies only to attorneys, and 15 U.S.C. § 1681n, which applies to prevailing consumers, Dkt. 336 at 2–3. In Owens's view,

> [i]t is profoundly ironic -- *and deeply troubling* -- that the Court admonished Plaintiff for the mere use of capital letters in a private email to defense counsel. However, the court has taken no comparable action against Trans Union or [its attorney] for conduct that unquestionably violates the Federal Rules of Civil Procedure. This covert and coded protection violates multiple provisions of ethics and judicial conduct.

*Id.* at 3–4.

Owens's motion for sanctions against Navient asserts that it "certified factual assertions and legal contentions to this Court that were demonstrably false, internally contradictory, and unsupported by any evidence, and then compounded those violations by filing an objectively frivolous 'Emergency Motion' seeking sanctions against [Owens] based on a fabricated interpretation of the Protective Order." Dkt. 377 at 1. Part of Owens's contention was that Navient stopped servicing his loans three years later than it told the court it did. *Id.* at 2; *see* Dkt. 437 at 2–3 (explaining the loans at issue and Navient's role in servicing them). Owens also asserted that Navient's motion to strike "[f]abricat[ed]" his obligation under the protective order to move for leave to file confidential documents under seal. *Id.* at 3.

As to ECMC, Owens argued that it "repeatedly certif[ied] factual assertions that are objectively false, internally contradictory, and squarely refuted by [its] own governing contracts,

sworn admissions, and compensation structure." Dkt. 419 at 1. He argued that ECMC misrepresented whether it performed debt collection or is a debt collector; contacted him; acquired or received his loans by assignment; had "possession, custody, or control of collection systems or collection records"; and received approval from the United States Department of Education to access his student-loan records. *Id.* at 4; *see id.* at 7–12 (using red text to assert the last of those arguments).

## DISCUSSION

### I. Motions to Seal

"[C]ourts should be ungenerous with their discretion to seal judicial records" and "undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418–19 (5th Cir. 2021) (quotation marks omitted). The decision to seal documents must be explained at a level of detail that permits appellate review, and a court abuses its discretion if it fails to mention "the presumption in favor of the public's access to judicial records" or to "articulate any reasons that would support sealing." *Id.* at 419 (quoting *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993)).

As noted, Navient moved to strike the confidential exhibits that Owens filed. Dkt. 329. Because striking an exhibit removes it from the court's consideration but not from public view, the court construed the motion as a request to seal the exhibits. *See* Dkts. 331, 343 at 3–4. And it granted the motion, explaining that Navient had asserted that "the exhibits contain 'servicing data' detailing the inner workings of a company-developed platform." Dkt. 343 at 4 (quoting Dkt. 339 at 2). Navient demonstrated that "[t]he exhibits would reveal the mechanics of proprietary systems that [it] expended significant resources developing and that contribute to its economic competitiveness." *Id.* For those reasons, the court ordered that the exhibits would remain sealed, but it required Navient to file redacted copies of them for the public record. *Id.* at 6. (Navient's motion concerned docket entries 311-6, 311-11, and 311-13, Dkt. 329 at 5–6. So did the court's

temporary sealing order. Dkt. 331. But the court's permanent sealing order stated that docket entries 311-6, 311-11, and *311-16* would remain sealed. Dkt. 343 at 6. That was a scrivener's error; the final docket entry the court intended to seal was 311-13, not 311-16.)

After that order was entered, each defendant filed a motion to seal part of its summary-judgment evidence. Dkts. 356, 359, 361. The documents that those motions sought to seal were the same kind of documents. Indeed, some of them were the exact same documents that Owens had filed. *See* Dkt. 354 at 4, 14, 21–22 (same documents as Dkts. 311-13, 311-6 at 8, 311-11 at 2); Dkt. 357 at 15, 18, 21–22 (same). Others were composed of identical or substantially similar information. Dkts. 354, 357, 360. Two of the motions expressly relied on the court's earlier determination that the documents warranted sealing. Dkts. 361 at 3, 356 at 4.

Yet on the same day the court granted Navient's motion, Dkt. 343, TransUnion filed the same documents as part of a summary-judgment exhibit without moving to seal them. *See* Dkt. 344-8 at 15–22. Twenty-three days later, after the other three sealing motions were filed, TransUnion moved to seal the exhibit. Dkt. 380. Owens also filed a notice alerting the court to TransUnion's error. Dkt. 390. Navient filed its own notice asking the court to strike Owens's notice and some of his other filings that addressed the sealing of the confidential documents. Dkt. 412.

TransUnion's motion to seal argues that it filed the confidential documents inadvertently and relies on the court's earlier order sealing the documents. Dkt. 380; *see* Dkt. 343 (order). Owens's notice, which the court construes as a response to the motion, argues that TransUnion's failure to promptly move to seal the documents means that he should not be sanctioned for his own filing of confidential documents and that the documents should not be sealed or treated as confidential. Dkt. 390 at 2–4.

The protective order required TransUnion, the party that filed Navient's confidential documents, to move to seal those documents. *See* Dkt. 343 at 2–3; *see also* Dkt. 259 at 7 (providing that, "[i]f any party wishes to submit to the Court information that the party seeks to keep under seal[,] . . . the party must also file a motion to seal pursuant to Local Rule CV-5(a)(7)"). As the court has explained, merely designating documents as "confidential" under a protective order

does not indicate that the documents should be sealed. Dkt. 343 at 3. The judicial-record sealing standard is more onerous. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022).

As the party with an interest in sealing its confidential documents, Navient ultimately bore the burden to satisfy that standard. *In re Gee*, No. 19-30953, 2019 WL 13067384, at *3 (5th Cir. Nov. 27, 2019) (Elrod, J., concurring). The court has already concluded that the standard is satisfied. Dkt. 343 at 3–4. Navient should not now be penalized with the public disclosure of those documents because TransUnion filed them without promptly moving to seal them. Once TransUnion realized its mistake, it took corrective action by filing a motion to seal. Dkt. 380. Nothing in the record suggests that TransUnion acted in bad faith or that its oversight was anything other than inadvertence. TransUnion filed the summary-judgment exhibit on December 8, 2025, and moved to seal it on December 31. *See* Dkts. 344, 380. That period included all eight days of Hanukkah, Christmas Eve, Christmas Day, and New Year's Eve. There were also 39 separate filings made in this case during that period. *See* Dkts. 343–382. Given the deluge of filings during the holiday season, TransUnion's oversight is excusable. *See, e.g.*, *Soto v. Danny Herman Trucking, Inc.*, No. SA-25-CA-01645-XR, 2026 WL 93144, at *1 (W.D. Tex. Jan. 12, 2026) (excusing a defendant's inadvertent failure to file an answer due on New Year's Eve).

All of the motions to seal, Dkts. 356, 359, 361, 380, will be granted because they seek to protect documents that, if publicly disclosed, would reveal the internal workings of Navient's proprietary systems and Navient's interest in keeping them sealed outweighs the public's interest in disclosure. *See* Dkt. 343 at 4.

## II. Owens's Sanctionable Conduct

In its show-cause order, the court explained that Owens violated the protective order by intentionally filing Navient's confidential documents without seeking leave to file them under seal. Dkt. 343 at 2–3. The protective order permits parties to designate materials produced in discovery as "confidential," restricting their disclosure to specified categories of people. Dkt. 259 at 3, 5. The show-cause order noted that

> [f]iling a document on the public record necessarily discloses it to third parties. To comply with the protective order, Owens could either challenge Navient Solutions' confidential designation in accordance with Part IV of the protective order or move to file the confidential materials under seal. Because Owens did not follow the procedures set out in Part IV of the protective order, he could not file the confidential materials without moving to file them under seal.

Dkt. 343 at 2–3 (citations omitted); Part IV of the protective order provides:

> A Receiving Party may challenge a Producing Party's designation at any time. Any Receiving Party disagreeing with a designation may request in writing that the Producing Party change the designation. The Producing Party will then have ten (10) business days after receipt of a challenge notice to advise the Receiving Party whether it will change the designation. If the parties are unable to reach an agreement after the expiration of ten (10) business days, and after the conference required under Local Rule CV-7(h), the Receiving Party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

Dkt. 259 at 4–5.

The show-cause order also authorized Owens to file a brief, Dkt. 343 at 6, which he did, Dkt. 369. In that brief, Owens first argued that the protective order is alone insufficient to warrant sealing judicial records and that Navient, as the party with an interest in sealing the records, ultimately had the burden to show why they should be sealed. Dkt. 369 at 2–3.

That is accurate, but it misses the point. The protective order required Owens to move to seal any confidential records he filed. Dkt. 343 at 2–3. Had he followed that order, he would have satisfied his protective-order obligation, allowing Navient to file a response in support of the motion explaining why its confidential documents needed to be sealed under the applicable standard.

Owens's response to the show-cause order also asserted that Federal Rule of Civil Procedure 83(b) precludes sanctions. Dkt. 369 at 4. In relevant part, that rule provides: "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement." Fed. R. Civ. P. 83(b). Owens asserts that there is no rule

requiring him to move for leave to seal. Dkt. 369 at 4. But the court previously rejected that premise. Dkt. 343 at 2–3. Owens had notice of the protective order, which warned that it was enforceable by sanctions under Rule 37(b). Dkt. 259 at 8.

Similarly, Owens asserts that the court has not "correct[ed] . . . the internal contradiction created by [its] own admission that [he] was correct" about whether he was obligated to file a motion to seal. Dkt. 369 at 5. "The district judge," he goes on, "had a duty to correct clear legal error but, instead, affirmed a known legal irregularity committed by the magistrate [judge] who later conceded the plaintiff's position. Now, both judges are in complete contradiction." *Id.*; *see id.* at 7.

He is mistaken. The judicial decisions Owens cites each explained that sealing is not automatic and that marking documents confidential is different from showing that they should be sealed. Dkts. 337 at 2, 343 at 3. But again, those explanations did not relieve Owens of his duty under the protective order to move to seal the documents. Dkts. 337 at 2, 343 at 3.

Owens also argues that striking the offending documents would be improper and that doing so would prejudice him. Dkt. 369 at 4–5. But the court did not strike the offending documents. *See* Dkt. 343 at 6. And even if it had (or were to do so), any such order would likewise not excuse Owens's violation of the protective order.

At the show-cause hearing, Owens argued that one paragraph of Part II of the protective order justified his challenged conduct. Dkt. 435. That part of the order states:

> 2. For purposes of this Protective Order, the "Confidential Information" designation means that the document or information is comprised of [six categories of information]. Confidential Information does not include, and *this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made* (the "Receiving Party") unless [exceptions that are not applicable here are satisfied].

Dkt. 259 at 2 (emphasis added). Owens asserted that, under that provision, the protective order did not apply to the exhibits because he was already familiar with the information contained in them, so they could not be considered confidential. Dkt. 435 at 8–11. He is incorrect.

Part II goes on to explain the methods for designating as confidential documents, things, and information:

> 3. Documents and things produced during the course of this litigation within the scope of paragraph 2 above may be designated in good faith by the party or non-party producing the document or thing to the Receiving Party (the "Producing Party") as containing Confidential Information by placing on each page and each thing a legend, or otherwise conspicuously designating electronically stored information [with language labeling it confidential]
>
> 4. A party may designate information disclosed at a deposition as Confidential Information by requesting the court reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after receipt of the final deposition transcript to designate, in writing to the other parties and to the court reporter, whether the transcript, or portions of the transcript, are to be designated as Confidential Information.

Dkt. 259 at 3–4. Those paragraphs make clear what is designated confidential under the protective order: documents or things that physically bear the required label and information disclosed in deposition testimony that is designated confidential in the transcript. Owens's argument that he already knew the information in the confidential documents misses the point. Navient designated the documents—not information in them—as confidential. Had Owens deposed a witness for Navient who testified to information Owens already knew, Owens could have challenged any confidentiality designation of that information in the deposition transcript on the basis of his prior knowledge. But that is not what happened here. And in any event, a challenge to a confidentiality designation must be brought according to Part IV's prescribed process, *see id.* at 4–5, not after the party challenging the designation has already made a disclosure in violation of the protective order.

Furthermore, the stage at which Owens raised that argument speaks against him. The first time he asserted an argument under Part II was in his "notice regarding inapplicability of sealing and defendant Navient Solutions, LLC's failure to conduct required due diligence." Dkt. 383 (capitalization altered). By that point, he had already argued that he did not violate the protective order in his objection to the temporary sealing order, Dkt. 335, his response to Navient's emergency motion, Dkt. 338, his notice of the filing of a petition for a writ of mandamus, Dkt. 341,

his "notice of clarification regarding [Navient's] reply," Dkt. 342, his brief in response to the show-cause order, Dkt. 369, and his motion for sanctions against Navient, Dkt. 377. Those filings all focused on why various provisions of the protective order meant that he did not need to move to seal the exhibits. In other words, his previous arguments were premised on the assumption that the protective order *does* apply. Sanctionable conduct is not cured by after-the-fact rationalizations. *See Est. of Johnson v. Comm'r*, 985 F.2d 1315, 1320 (5th Cir. 1993); *Ferguson v. Sw. Reg'l PCR, LLC*, No. 5:22-cv-182-H, 2024 WL 4101803, at *5 (N.D. Tex. July 31, 2024), *report and recommendation rejected*, 2024 WL 4544129 (N.D. Tex. Oct. 22, 2024) (rejecting the magistrate judge's report and recommendation because the parties settled).

**III. Appropriate Sanctions**

When a party refuses to obey a discovery order, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the" violation, unless the violation was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489–90 (5th Cir. 2012) (holding that violation of a protective order may result in Rule 37 sanctions). Conduct is substantially justified "if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Keplar v. Google, LLC*, 346 F.R.D. 41, 53 (N.D. Tex. 2024) (quoting *SEC v. Kiselak Cap. Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012)). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* (quoting *Kiselak Cap.*, 2012 WL 369450, at *3).

The court already found that Owens's conduct was not substantially justified. Dkt. 343 at 5. And as just explained, Owens's later contentions fare no better than his earlier ones. Navient asserts that its attorneys' fees incurred as a result of Owens's violation of the protective order would be a reasonable sanction under the circumstances. Dkt. 372 at 2. And at the show-cause

hearing, Owens proposed no other sanction and declined multiple opportunities to challenge the reasonableness of Navient's fees. *See* Dkt. 435.

The declaration supporting those fees, which total $2,046, explains that they resulted from attorney conferences regarding Owens's violation of the protective order, preparation of Navient's motion to strike and reply, and review of Owens's response. Dkt. 373 at 1. The fees consist of 0.6 hours of partner time at a rate of $310 per hour and 6.2 hours of associate time at a rate of $300 per hour. *Id.* at 1–2. They do not include the fees Navient incurred preparing its notice of intent to appear at the show-cause hearing, Dkt. 371, its statement regarding sanctions, Dkt. 372, or its declaration, Dkt. 373. Nor do they include Navient's appearance at the show-cause hearing, *see* Minute Entry for Jan. 5, 2026. Especially in light of those significant exclusions, the fee award Navient requests is reasonable. *See Carr v. Pinnacle Frac Transp. LLC*, No. 4:23-cv-00709-ALM-BD, 2025 WL 3778940, at *6 (E.D. Tex. Dec. 29, 2025) (finding an hourly rate of $425 reasonable in this division and collecting cases finding hourly rates of between $295 and $500 reasonable), *report and recommendation adopted*, 2026 WL 246905 (E.D. Tex. Jan. 29, 2026).

## IV. Owens's Motions for Sanctions

Rule 11 provides that, by signing, filing, submitting, or advocating a pleading, written motion, or other paper, an attorney or unrepresented party certifies to the court

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court may impose sanctions for violating Rule 11 either on a party's motion or sua sponte. *Id.* R. 11(c)(1)–(3). The rule includes a safe-harbor provision: any motion for Rule 11 sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* R. 11(c)(2). Compliance with the safe-harbor provision is "a mandatory prerequisite for a Rule 11 motion." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 388 (5th Cir. 2022); *see In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008) (stating that the court has "continually held that strict compliance with Rule 11 is mandatory").

The central purpose of Rule 11 is "to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). It "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* (quotation marks omitted).

None of Owens's sanctions motions is well taken. The defendants are entitled to recover the fees they incurred responding to them.

**A. TransUnion**

Owens argues that TransUnion twice made frivolous requests for attorneys' fees. Dkt. 336 at 1–2. He states that one of TransUnion's requests, Dkt. 296, was based on Federal Rule of Civil Procedure 37, which "authorizes fees only after a party disobeys a discovery order," Dkt. 336 at 2. Because "no discovery order had been violated and no motion to compel had been granted," Owens views that motion as frivolous. *Id.* The second request, Dkt. 308 at 3, was based on 28 U.S.C. § 1927, which Owens contends "applies only to attorneys," and 15 U.S.C. § 1681n, which he contends "authorizes fees only to prevailing consumers -- *not defendants*," Dkt. 336 at 2.

In response, TransUnion notes that it had leave of court to file the first of those motions, *see* Minute Entry for Aug. 15, 2025, and asserts that it also requested fees based on the court's inherent

power, which Owens did not challenge, Dkt. 340 at 3; *see* Dkt. 296 at 6. TransUnion also argues that Owens understates the scope of Rule 37. Dkt. 340 at 3.

TransUnion is correct that the scope of Rule 37 extends beyond failure to comply with a discovery order. Specifically, the part of the rule that TransUnion's motion cited provides for fee shifting when the court rules on a motion to compel discovery. Fed. R. Civ. P. 37(a)(5). In his reply, Owens acknowledges that part of the rule and argues that TransUnion did not prevail on a motion to compel discovery. Dkt. 346 at 3. But TransUnion asserts that it "was successful on the relief requested in its Unilateral Submission." Dkt. 340 at 3; *see* Dkt. 278 (unilateral submission). The court eventually denied TransUnion's motion and noted that TransUnion had not filed a motion to compel. Dkt. 416 at 7. But the point was at least debatable, and the court ordered Owens to sit for a deposition, as TransUnion had requested. Minute Entry for Aug. 15, 2025. Additionally, the court's authorization for TransUnion to file its motion could not reasonably be questioned. At the discovery hearing, the court specifically gave TransUnion permission to file a motion for attorneys' fees. *Id.* In ruling on that motion, the court noted that the decision not to award fees as a sanction based on its inherent power was a close one, Dkt. 416 at 8, and again warned Owens against using hostile or abuse language, *id.* at 12.

As to its other fee request, TransUnion argues that Owens again understates the scope of the applicable provisions and the court's inherent authority. Dkt. 340 at 4–6. It is again correct. Section 1927 applies not just to attorneys, but to "[a]ny attorney or other person admitted to conduct cases in any court of the United States." 28 U.S.C. § 1927. A pro se litigant is a "person admitted" within the meaning of that provision, *McCully v. Stephenville ISD*, No. 4:13-cv-702-A, 2013 WL 6768053, at *2 (N.D. Tex. Dec. 23, 2013), making TransUnion's request under § 1927 "warranted by existing law," Fed. R. Civ. P. 11(b). The case Owens cites as contrary authority is inapposite; it involved fees assessed against a represented defendant, not an "attorney[] or [other person] admitted to practice before the court." *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996).

Likewise, § 1681n does not apply only to a prevailing consumer. It applies to a "prevailing party." 15 U.S.C. § 1681n(c). And it applies when a party prevails on a "pleading, motion, or other paper filed in connection with an action under" the Fair Credit Reporting Act, not just when it prevails on an entire case. *Id.* That statute formed a non-frivolous basis for TransUnion's request.

Finally, Owens looks for support in a subsequent order denying a separate request for attorneys' fees. Dkt. 346 at 2; *see* Dkt. 328. According to Owens, that order "foreclose[d]" the theories that TransUnion later asserted in the fee requests at issue here. Dkt. 346 at 2. But the earlier order did not state that Owens could never be required to pay TransUnion's fees; it stated only that TransUnion had not shown that Owens's conduct in opposing a separate motion did not rise to the level of bad faith required to impose fees as a punitive sanction under the court's inherent powers. Dkt. 328 at 3. And because it issued after TransUnion filed the requests now at issue, it could not have rendered those requests frivolous after the fact.

**B. Navient**

Owens's sanctions motion against Navient presents two arguments. Each fails.

Owens's first argument is that "Navient certified factual assertions and legal contentions to this Court that were demonstrably false, internally contradictory, and unsupported by any evidence." Dkt. 377 at 1. Specifically, Owens argues that Navient's representation in its summary-judgment briefing that it transferred responsibility for servicing his loans to MGA in 2015 was untruthful. *Id.* at 2–3; *see* Dkts. 326 at 3, 352 at 4.

Owens reaches that conclusion based on a letter from ECMC's vice president that he obtained during discovery. The letter states that,

> [e]ffective July 1, 2018, [ECMC] will be the designated third-party servicer for the Federal Family Education Loan Program (FFELP) portfolios for the following guarantors: . . . Michigan Guaranty Agency . . . . ECMC is working closely with Navient Servicing, the current third-party guarantor servicer, as well as the four guarantors, to plan for the transition.

Dkt. 377-2 at 2. In its summary-judgment briefing, Navient stated that "[s]ervicing of [Owens's] sixteen FFELP loans transferred from Sallie Mae, Inc. to the guarantor, MGA, on April 28, 2015,

after the loans defaulted due to Mr. Owens'[s] non-payment." Dkt. 352 at 4; *see id.* at 3 n.1 (explaining that Sallie Mae, Inc., was Navient's predecessor). Even assuming the letter Owens quotes conclusively proves that Navient generally serviced MGA's loan portfolio until 2018, that general statement does not contradict its assertion that it transferred servicing of Owens's loans in particular three years earlier. *See* Dkt. 352-1 at 5 (establishing the 2015 transfer), 352-3 at 88 (reflecting Owens's recollection of the 2015 transfer).

Owens's second argument is that Navient's emergency motion to strike confidential documents was improper because no emergency existed and Owens did not violate the protective order. Dkt. 377 at 5–6. The court has already rejected that argument. Dkt. 343; *see supra* Part II.

**C. ECMC**

Owens asserts that ECMC "certif[ied] factual assertions that are objectively false, internally contradictory, and squarely refuted by [its] own governing contracts, sworn admissions, and compensation structure." Dkt. 419 at 1; *see* Dkt. 378 (superseded motion). But those assertions go to why Owens believes ECMC is not entitled to summary judgment, and they were disputed in that context. *See generally* Dkt. 387.

Although Rule 11 permits the court to impose sanctions when a pleading or motion lacks evidentiary support, sanctions are not proper just because a party loses at summary judgment or trial. *Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (stating that the Fifth Circuit's "precedent does not allow the imposition of Rule 11 sanctions merely for the eventual failure of a claim"); *Gilmour v. Aetna Health, Inc.*, No. 5:17-cv-00510-FB, 2020 WL 3184365, at *13 (W.D. Tex. June 12, 2020). A sanctions motion is improper if it "simply reiterates the arguments advanced in [a] summary judgment motion." *Gilmour*, 2020 WL 3184365, at *13; *see McCormick v. Ethos Techs., Inc.*, No. 4:24-cv-00457-SDJ-BD, 2025 WL 932173, at *2 (E.D. Tex. Mar. 27, 2025) (finding Rule 11 sanctions based on disputed fact questions inappropriate). Owens's sanctions motion against ECMC fails for that reason.

**D. Attorneys' fees**

Each of the defendants asked the court to award it reasonable attorneys' fees incurred in responding to Owens's sanctions motions. Dkts. 340 at 6, 393 at 6, 420 at 4–5. Those requests are based on Rule 11(c)(2), which provides that, "[i]f warranted, the court may award to the prevailing party" on a Rule 11 motion "the reasonable expenses, including attorney's fees, incurred for the motion."

Under that rule, the court may award fees to the party who prevailed on the motion "whether the movant or the target of the motion." *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, No. 4:18-cv-735-KPJ, 2021 WL 5514594, at *3 (E.D. Tex. Nov. 24, 2021) (quoting Fed. R. Civ. P. advisory cmte. nn. to 1993 amend.). "An award of reasonable expenses under Rule 11(c)(2) is not a sanction for violating Rule 11(b)." *Vanliner Ins. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *1 (N.D. Tex. Apr. 24, 2014). That means the prevailing party need not comply with the notice requirement of Rule 11(c)(2) or the substantive requirements of Rule 11(b). *Id.*; *Roor Int'l*, 2021 WL 5514594, at *3. "Instead, the court applies the requirements of Rule 11(c)(2) itself, which provides that the award of expenses to the prevailing party must be 'warranted' and 'reasonable.'" *Roor*, 2021 WL 5514594, at *3 (quoting *Shippitsa Ltd. v. Slack*, No. 3:18-cv-1036-D, 2019 WL 277613, at *10 (N.D. Tex. Jan. 22, 2019), which in turn quoted Rule 11(c)(2)). Fee shifting is warranted if a motion lacks merit and was filed to drive up costs or harass an opponent, was frivolous, or presented no good-faith arguments. *Id.*; *Vanliner Ins.*, 2014 WL 1632181, at *2.

As already noted, Owens's filing of the sanctions motions just addressed is far from the first instance of his litigation misconduct; the court has warned him multiple times. *See* Minute Entries for Dec. 8, 2021, Aug. 15, 2025; Dkts. 47 at 1–2, 78 at 16, 232 at 3–4, 343 at 4–6, 416 at 11–12, 435 at 7. One of Owens's sanctions motions was filed just five days after the last of those warnings. *See* Dkts. 416 at 11–12, 419. He had filed four other sanctions motions before then. Dkts. 168, 336, 377, 378. And even after the court's most recent admonishment that Owens should refrain from hostile and abusive language, Dkt. 416 at 11–12, he again asserted on the record that ECMC was pushing

a "falsely contrived narrative" that was "plainly false[,] . . . egregiously misleading," and based on "dirty evidence." Dkt. 430 at 8–9.

It appears to the court that Owens filed his sanctions motions not in good faith, but rather to harass the defendants or drive up their costs. The court has repeatedly warned him that his behavior is inappropriate, patiently providing guidance intended to help him comport himself appropriately in this litigation. That approach led the court to deny previous motions for sanctions against him. Dkts. 232, 416. Owens has abused the court's patience, continuing his inappropriate conduct long beyond the point that any similarly warned attorney or pro se litigant reasonably would. Fee shifting is warranted. *See Roor*, 2021 WL 5514594, at *3 (awarding fees without a hearing); *Vanliner Ins.*, 2014 WL 1632181, at *2 (same). The court will authorize submissions of evidence and argument on the proper amount of fees.

## CONCLUSION

It is **ORDERED** that:

1) the motions to seal, Dkts. 356, 359, 361, 380, are **GRANTED**;
2) the clerk of court **SEAL** Dkt. 344-8;
3) Owens's superseded motion for sanctions, Dkt. 378, is **DISMISSED** as moot;
4) Owens's motions for sanctions, Dkts. 336, 377, 419, are **DENIED**;
5) Navient's motion for sanctions against Owens, Dkt. 329 at 4–6, is **GRANTED**;
6) within 60 days of the docketing of this order, Owens pay Navient $2,046 in attorneys' fees and, if he fails to do so, this order will be enforceable by further sanctions or contempt; and
7) within 30 days of the docketing of this order, each defendant file a declaration or affidavit with any necessary exhibits establishing the reasonable attorneys' fees it incurred as a result of Owens's motions for sanctions, Dkts. 336, 377, 378, 419. Within 14 days of that deadline, Owens may file a combined brief no longer than 2,500 words explaining why any defendant's fee request is not reasonable.

So **ORDERED** and **SIGNED** this 9th day of November, 2026.

Bill Davis
United States Magistrate Judge